IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COUNTY OF SAN MIGUEL, COLORADO, et al.,<br><br>    Plaintiffs,<br>v.<br><br>MACDONALD, et al.,<br><br>    Defendants,<br><br>and<br><br>COLORADO CATTLEMEN'S ASSOCIATION,<br>8833 Ralston Rd.<br>Arvada, CO 80002-2239<br><br>PARTNERSHIP FOR THE WEST, and<br>350 Indiana Street, Suite 640<br>Golden, CO 80401<br><br>WESTERN CONSERVATION COALITION<br>1074 24 Road<br>Grand Junction, CO 81505<br><br>Intervenor-Applicants | Civ. No. 06-1946 (RBW) |

**INTERVENOR-APPLICANTS COLORADO CATTLEMEN'S ASSOCIATION, PARTNERSHIP FOR THE WEST, AND WESTERN CONSERVATION COALITION'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE AS DEFENDANTS**

Intervenor-Applicants the Colorado Cattlemen's Association ("Cattlemen's"), the Partnership for the West ("Partnership") and Western Conservation Coalition ("Western") collectively ("Applicants") submit the following Reply Memorandum in Support of their Motion for Leave to Intervene as Defendants.

**STATEMENT**

Plaintiffs' seek an order for an immediate emergency rule listing the Gunnison sage grouse as "endangered" pursuant to Section 4(b)(7) of the Endangered Species Act

Civ. No. 06-1946

("ESA"). Compl. at 24, ¶ E. Even if this Court does not order the U.S. Fish and Wildlife Service ("FWS") to issue an emergency rule listing Gunnison sage grouse as endangered, Plaintiffs seek "new proposed and final listing and critical habitat determinations for Gunnison sage grouse." Compl. at 24, ¶ D.

Plaintiffs unequivocally cite the activities of Applicants as justification for listing the Gunnison sage grouse, yet seek to deny their participation in this proceeding. Opposition at 6. While Plaintiffs contend Applicants "bring nothing additional to this case," they employed a consultant to submit 13 pages of rebuttal to comments and review on Gunnison sage grouse provided by Applicants. Opposition at 6; Declaration of Clait Braun. Finally, Plaintiffs prayed for an immediate order granting endangered status, yet go to great lengths to explain such relief is highly unlikely, if not unwarrranted. Opposition at 7, 11. Plaintiffs cannot have it both ways.

## SUMMARY OF ARGUMENT

Applicants have moved to intervene in this case to protect their interests in the resolution of this case, to effectively and efficiently resolve these issues and to prevent the need for future litigation. A ruling for Plaintiffs will result in immediate injury to the interests of Applicants by: (1) listing Gunnison sage grouse as "endangered" pending proposed and final listing determinations; (2) creating regulatory uncertainty as if to cloud title to the activities and interests of Applicants pending a final listing determination; and (3) taking Applicants' time, money and other resources away from their respective businesses for another lengthy administrative proceeding. Applicants meet the standards for intervention under Fed. R. Civ. P. 24(a) and fall within the "zone of interests" for standing to intervene in this proceeding. Applicants bring expertise on

the Gunnison sage grouse that may help resolve this proceeding expeditiously. Finally, Applicants are not adequately represented by Federal Defendants.

## ARGUMENT

As demonstrated herein, Applicants must be allowed to intervene because they will suffer concrete and imminent harm if Plaintiffs' lawsuit succeeds. *U.S. v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980) citing *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967); *see also Wilderness Soc'y v. Babbitt*, 104 F. Supp.2d 10, 18 (D.D.C. 2000).

Plaintiffs seek a listing of the Gunnison sage grouse in this proceeding, as they have sought listing in previous administrative and legal actions. Complaint at 16-21, ¶¶ 46-65. Plaintiffs cannot expect to vigorously pursue these proceedings while silencing the persons and entities most affected by their actions. Applicants seek the ability to defend their legitimate interests in, among other things, the use of <u>their own lands</u> upon which Gunnison sage grouse reside. Memorandum of Points and Authorities in Support of Intervenor-Applicants Motion for Leave to Intervene ("Memo") at 12-13. Applicants have far more at stake in this proceeding than Plaintiffs.

Plaintiffs concede intervention is timely, but aver: (1) Applicants have no legally protected interest in this action; (2) that the federal defendants adequately represent Applicants; and (3) that Applicants lack constitutional standing. Opposition at 4, 15. As demonstrated below, these arguments are without merit.

### I. Applicants Have Legally Protected Interests that May be Impaired in this Action

Plaintiffs effectively concede Applicants' interests by arguing they "are incompatible with the long-term biological needs of the species." Opposition at 5-6. In

the event the Court orders an emergency listing of the Gunnison sage grouse as "endangered," Applicants would no longer be able to conduct their activities on federal, or even their own private lands, free from the restrictions of the ESA. Memo at 13. Applicants' permits, licenses and other federal authorizations, which are required in the ordinary course of their respective businesses, would immediately be subject to consultation, or reinitiation of consultation, under the ESA. Memo at 12-13; 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.16. In addition, Applicants would face Section 9 "take" liability as well as the potential for civil and criminal penalties. Memo at 14.

A.  Listing the Gunnison Sage Grouse Would Harm the Interests of Applicants

Plaintiffs seek an order "immediately listing Gunnison sage-grouse as 'endangered' under the ESA, pending the agency's completion of normal listing procedures and rulemaking." Compl. at 24 ¶ E (Emphasis added). If Plaintiffs believe, as they imply in their Opposition, that an emergency listing pursuant to Section 4(b)(7) of the ESA is unnecessary, unwarranted or has little chance of success, they should not have prayed for such relief in their complaint. See Opposition at 11. Moreover, *post hoc* qualifications that emergency listing is necessary only if Gunnison sage grouse populations begin to decline belies the logic of this entire proceeding. See Opposition at 7, 11.

Federal agencies must consult with the FWS to evaluate the impact of agency actions and authorizations on listed species. 16 U.S.C. § 1536(a)(2). As Plaintiffs point out, consultation is indeed required for permits and activities that can be construed to "adversely affect" listed species or "adversely modify" designated critical habitat.

Civ. No. 06-1946                                                                                                    4

Opposition at 11 *citing* 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.01. Paintiffs characterize the very activities of Applicants as adverse to the Gunnison sage grouse:

> . . . they have an interest in carrying out grazing, oil and energy exploitation, and other economic activities, and that these activities, which destroy degrade, and/or convert suitable Gunnison sage grouse habitat, are incompatible with the long-term biological needs of the species . . . .

Opposition at 6. Applicants take issue with this characterization. Regardless, in their zeal to demonize Applicants, Plaintiffs concede the activities of Applicants "would therefore be restricted as a result of the species being listed under the ESA." *Id.* Accordingly, Plaintiffs cannot seriously dispute that Applicants have an interest that may be impaired by the outcome of this proceeding.

Plaintiffs also help make the case for intervention in their contention that Section 7 consultations are occurring in the 9th Circuit and that "changes to the project design" are implemented to avoid impacts to listed species in a majority of consultations. Opposition at 11 n.7. The imposition of "changes to project design" or other mitigation measures would harm the interests of Applicants. For example, Cattlemen's members would likely face reductions in numbers and duration on their long-held federal grazing permits. Memo at 3. Applicants have a clear interest in being free from the burdens resulting from an ESA listing of the Gunnison sage grouse.

The statistics on consultations cited by Plaintiffs do not reflect instances where actions are not pursued due to the burdens of the consultation process. *See* Opposition at 13-14 n.8. Applicants would suffer harm from the cost of delayed, modified or withdrawn projects as well as the "many steps" of consultation cited by Plaintiffs. Memo at 5,6, and 8; Opposition at 18. As President George H. Bush once declared, Section 7 of the ESA "was intended as a shield for species against the effects of major construction

projects like highways and dams, not a sword aimed at the jobs, families, and communities of entire regions." Michael Wines, *Bush in the Far West, Sides with Loggers*, N.Y. Times Sept. 15, 1995.

And Section 7 consultations can drag on for years due to a loophole in the timelines provided in the ESA. Testimony of W. Henson Moore, president and CEO, American Forest and Paper Association, before the U.S. House of Representatives, Endangered Species Task Force of the House Resources Committee, May 18, 1995. Even relatively minor delays could set-back projects that need to be completed in the summer into the winter months resulting in additional costs to Applicants. Memo at 8 *citing* Paris Decl. ¶ 8.

Plaintiffs assert it is unclear if Section 9 take prohibitions would apply to the grouse if it is listed as "threatened" rather than "endangered." Opposition at 12. But the Secretary of Interior currently extends Section 9 take prohibitions to all threatened species absent a specific ruling to the contrary. *See* 16 U.S.C. § 1533(d); Notice of Interagency Cooperative Policy for the Endangered Species Act Section 9 Prohibitions, 59 Fed. Reg. 34272 (July 1, 1994). And Applicants would still be subject to civil and criminal penalties.

As Plaintiffs suggest, Applicants could apply for "incidental take permits" as a "safe harbor" from Section 9 liability. Opposition at 12. Incidental take permits generally take the form of habitat conservation plans ("HCPs") which specify those activities that are still permitted to occur as well as mitigation measures that must be implemented for the species on private lands. *See* 16 U.S.C. § 1539(a)(2)(B)(ii). But Applicants have an interest in conducting their respective businesses free from such

regulatory hurdles and prohibitions. Memo at 12-13. Entering into an HCP can be a lengthy and arduous process. For example, the action of entering into an HCP may itself be subject to Section 7 consultation under the ESA. J.B. Ruhl, *How To Kill Endangered Species, Legally: The Nuts And Bolts Of Endangered Species Act 'HCP' Permits For Real Estate Development*, Environmental Lawyer, Vol. 5, No. 2, at 387 (1999). Finally, Plaintiffs themselves have been known to challenge incidental take permits upon issuance. *See, e.g., Center for Biological Diversity v. U.S. Fish and Wildlife Service*, 20 F.Supp.2d 594 (5th Cir 2002) (Issuance of an incidental take permit under § 10(a)(1)(B) challenged on grounds FWS failed to ensure applicant would minimize and mitigate the impacts of the taking to the maximum extent possible).

Applicants have an interest in pursuing their respective businesses free from the need to enter prolonged and expensive processes that may, themselves, be challenged by environmental groups.

II.  **Reversal and Remand Would Also Harm the Interests of Applicants**

Even if reversal and remand of the FWS's determination was the only relief Plaintiffs sought, Applicants' have an interest in the outcome of this proceeding that warrants intervention. Upon remand, Applicants would have to spend additional time and resources they would ordinarily devote to their businesses to protect their interests in further administrative proceedings. Memo at 9. This would likely include reviewing newly-proposed rules, attending public hearings, commenting on proposed and final determinations and potentially hiring consultants and/or counsel to represent their interests.

During this process, which can take twelve-to-eighteen months, the activities and interests of Applicants would be shrouded with doubt and uncertainty as if Plaintiffs had cast a cloud on title to Applicants' lands and businesses. See 16 U.S.C. §§ 1533(b)(3)(B), 1533(b)(6)(B)(i). Such uncertainty is costly to Applicants and begs for their participation in this proceeding. Memo at 9. For example, it could cause Applicants' members to revisit short and long-term decisions about where and how to allocate time and resources within the range of the Gunnison sage grouse.

It follows that <u>any relief</u> sought be Plaintiffs will impact Applicants and impair their ability to conduct their respective businesses such that intervention is appropriate.

### III. Applicants Have an Interest in the Outcome of this Case and Fall within the Zone of Interests such that Intervention is Appropriate

Intervention of right depends on "whether the applicant claims an interest relating to the property or transaction which is the subject of the action" and "whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicants ability to protect that interest." *Fund for Animals v. Norton*, 322 F.3d 728, 731-32 (D.C. Cir. 2003). Plaintiffs argue that the interests of Applicants are speculative and do not fall within the "zone of interests" such that intervention is appropriate. Opposition at 11-12. But it is well established that economic interests are within the "zone of interests."

The Supreme Court has articulated the zone of interests test to standing by asking "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Data Processing Service Organziations, Inc. v. Camp*, 397 U.S. 159 (1970). And, in *Bennett v. Spear*, the Supreme Court clarified that the zone of interests includes

economic interests in ESA cases. 520 U.S. 154, 177 (1997). In dictum, Justice Scalia also noted that the standard in ESA cases should be particularly lenient because all persons have an interest in the environment. *Id.* Here, Applicants have economic interests at stake as well as an interest in the environment and the listed status of the Gunnison sage grouse sufficient to warrant intervention. Memo at 3,4 and 7.

Plaintiffs' cite, and attach as an exhibit, a U.S. District Court for the District of Idaho order denying intervention as precedent. Opposition at 6-7. An unpublished order from the U.S. District Court for the District of Idaho is not binding on the circuit courts, or even to other district judges in the 9th Circuit--let alone this Court. *See U.S. v. Articles of Drugs Consisting of 203 Paper Bag, etc.*, 818 F.2d 569, 572 (7th Cir. 1987). Even if it were, the two cases can readily be distinguished. For example, fourteen parties sought intervention in that case. *Western Watersheds Project v. U.S. Fish and Wildlife Serv.* Case No. CV-06-277. And there, the plaintiffs did not seek an emergency listing. Here, Cattlemen's, the Partnership and Western collectively seek intervention in a case in which Plaintiffs seek immediate listed status as endangered for the Gunnison sage grouse. Compl. at 24, ¶ E.

Plaintiffs cite another case from the 9th Circuit for the proposition that Applicants can protect their interests through subsequent or separate administrative or judicial proceedings. Opposition at 10 *citing Sierra Club v. EPA*, 995 F.2d 1478, 1486 (9th Cir. 1993). By their intervention, Applicants hope to further judicial economy and avoid additional legal or administrative proceedings.

A number of courts have also held that an applicants interest in land, be it economic or purely aesthetic, is sufficient for intervention under Fed. R. Civ. P. 24(a).

For example, in *Sierra Club v. Espy,* an association of timber purchasers had sufficient interest to intervene based on timber contracts that were threatened by a ban on "even-aged management" sought by environmental groups. 18 F.3d 1202, 1207 (5th Cir. 1994); *see also Sierra Club v. Glickman,* 82 F.3d 106, 110 (5th Cir. 1996) (Farm Bureau, whose members are landowners, had sufficient interest to justify intervention in ESA suit against the Secretary of Agriculture). Applicants in this case rely on permits, licenses and other federal authorizations on private and public lands that could be affected by the outcome of this proceeding. Memo at 9. Applicants also own land within the range of the Gunnison sage grouse that will be affected by this proceeding. Memo at 12-13.

Applicants, then, have an interest relating to the property or transaction that is the subject of this proceeding. *See Bennett v. Spear, supra.* And disposition of this case may well impact Applicants' ability to protect their interests. *Id.*

### IV. Applicants Bring Knowledge, Expertise and Experience Relative to Gunnison Sage Grouse to this Proceeding

Applicants have particular knowledge, expertise and experience with Gunnison sage grouse and with activities construed to threaten Gunnison sage grouse by Plaintiffs and the FWS. Memo at 11. For example, Cattlemen's members have observed Gunnison sage grouse first-hand for many years. Memo at 3 *citing* Fankhauser Decl. ¶3. And Western previously expressed its views on the listed status of Gunnison sage grouse in comments to local, state and federal officials. Memo at 8. In addition, Western commissioned independent scientific review of whether Gunnison sage grouse should be considered separate from other sage grouse. *Id.* Plaintiffs claim Applicants "bring nothing additional to this case." Opposition at 19. Yet Plaintiffs employed a consultant to submit a 13-page rebuttal to the comments and review provided by Applicants.

Declaration of Clait Braun, Ph.D. That Plaintiffs would undertake such an effort speaks to the efficacy of intervention in this proceeding. Nor can Plaintiffs supplement an administrative record that has not yet been designated with attachments of questionable relevance to their pleading.

For all of the reasons above, Applicants have a sufficient interest in the outcome of the proceeding to justify intervention.

**V.     Applicants Are Not Adequately Represented by the Federal Defendants**

As the Plaintiffs concede, the burden of inadequate representation is typically not great. *Trobovich v. United Mine Workers of America,* 404 U.S. 528 (1972). In fact, the burden is on Plaintiffs to prove representation is adequate. *Alexander v. FBI*, 186 F.R.D. 21, 31 (D.D.C. 1998) (*quoting American Tel. & Tel.*, 642 F.2d at 1293). Plaintiffs have not met their burden.

Both Plaintiffs and the FWS characterize the activities of Applicants as "threats" to the Gunnison sage grouse. Opposition at 6; Final Listing Determination for the Gunnison sage grouse as Threatened or Endangered, 71 Fed. Reg. 19954, 19962-72 (April 18, 2006). The FWS could not reasonably be construed to represent the views and interests of Applicants when it considers their activities "threats" to the Gunnison sage grouse. Nor can the FWS adequately represent the economic interests of Applicants at the same time they represent the interest of the general public as a whole. *See In Re Sierra Club,* 945 F.2d 776 (4th Cir. 1991); *Utahns for Better Transportation vs. U.S. Dept of Trans,* 295 F.3d 1111 (10th Cir. 2002).

## VI. Applicants Have Constitutional Standing to Intervene in this Action

Applicants have satisfied the four-part test for intervention as of right pursuant to Fed. R. Civ. P. 24(a). *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998) (Intervention allowed because the patent holder had interest in statute, had its own interests at risk, and might not have been adequately represented by manufacturer). As Plaintiffs concede, intervention is timely. Opposition at 4. Applicants have legally protected interests in an action that threatens to impair those interests and no party adequately represents the interests of Applicants. *SEC v. Prudential Sec., Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998). Because Applicants have satisfied the requirements for intervention pursuant to Fed. R. Civ. P. 24(a), they satisfy Article III's standing requirement. *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003).

Even the threat of injury suffices for standing to intervene. For example, in *Fund for Animals v. Norton*, the D.C. Circuit reversed the district court and allowed intervention because the "threatened loss of tourist dollars, and consequent reduction in funding for Mongolia's conservation program, constitute a concrete and imminent injury." 322 F.3d 728, 733 (D.C. Cir. 2003). If a Mongolian agency can intervene in an ESA case to protect its interest in hunting sheep, domestic ranchers and business interests must be allowed to intervene in a proceeding that could affect their livelihoods. Applicants have a concrete interest in this proceeding. Even a "threatened loss" justifies intervention. *Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (Threat of injury to CMA's members that produced munitions sufficient to satisfy standing requirement).

Other cases cited by Plaintiffs can readily be distinguished from this proceeding. In *Building and Const. Trades Dept. v. Reich*, the applicants failed to demonstrate that their interests were not adequately represented by the Department of Labor. 40 F.3d 1275, 1282 (D.C. Cir. 1994). As discussed herein, the Federal Defendants do not adequately represent Applicants. And *Reich* has been recognized as an extreme in intervention cases. *Mausolf v. Babbitt*, 85 F.3d 1295 (8th Cir. Minn. 1996). And *Lujan v. Defenders of Wildlife*, does not relate to intervention at all. 504 U.S. 555, 559 (1992). Rather, *Lujan* applies to standing for plaintiffs to bring suit. *Id.*

Accordingly, Applicants meet or exceed the requirements of standing to intervene in this proceeding.

### VII. Applicants Satisfy the Standard for Permissitve Intervention

In the alternative, Applicants seek intervention on a permissive basis under Fed. R. Civ. P. 24(b). Permissive intervention is also liberally construed. *EEOC v. Nat'l Children's Intervenors-Defendants, Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998) ("flexible interpretations" of rule appropriate in favor of intervention); *Nuesse*, 385 F.2d at 704-06 (D.C. Circuit favors liberal allowance of permissive intervention).

Ironically, after Plaintiffs spent years on concerted efforts to list the Gunnison sage grouse, they complain intervention by those most affected by such a decision would prejudice Plaintiffs and cause undue delay. Opposition at 19. However, Plaintiffs concede intervention is timely. Opposition at 4. And Applicants committed to comply with all scheduling orders established by this Court. Memo at 17. Permissive intervention, then, is entirely appropriate in this case.

### VIII. Applicants' Participation in this Action Should not be Restricted

Should this Court grant intervention, Plaintiffs seek arbitrary limits on Applicants' participation. For example, Plaintiffs argue Applicants should be precluded from filing motions independently of the Secretary and prohibited from seeking discovery not sought by the Secretary. Opposition at 21. Such limitations are wholly inappropriate where, as here, the interests of Federal Defendants and Applicants differ substantially. Plaintiffs seek the absurd by requesting this Court limit Federal Defendants and Applicants to one-half of the applicable page limitations for briefs provided in the Local Rules. Opposition at 21. Finally, Plaintiffs argue intervention should be limited to intervention in solely the remedies phase of this case. Opposition at 21.

Such restrictions would defeat the very purpose of intervention. Fed. R. Civ. P. 24(a). Applicants have committed to abide by scheduling orders issued by this Court, and by their intervention, seek to further the need for future administrative and judicial proceedings. Plaintiffs cite *Stringfellow v. Concerned Neighbors in Action*, in support of limiting the scope of intervention. 480 U.S. 370, 378 (1987). But *Stringfellow* simply ruled that intervention <u>on appeal</u> was limited to claims brought in the original proceeding. *Id.* at 377. Applicants' varied interests in the proper administration of environmental laws such as the ESA, conservation efforts for the Gunnison sage grouse, its classification as a species, and listed status under the ESA, should not be restricted. Memo at 8. Applicants do not seek to dramatically alter the scope of this proceeding. Rather, Applicants simply wish to bring to bear their experience, expertise and interests in the subject matter, and outcome, of this proceeding.

Accordingly, Applicants participation in this proceeding should not be restricted as Plaintiffs wish.

## CONCLUSION

For the foregoing reasons set forth above, the Applicants respectfully requests that this Court grant its motion to intervene as of right or, in the alternative, permissive intervention.

Submitted this 22nd day of March, 2007.

/s/ Anurag Varma
_____
Anurag Varma
(D.C. Bar No. 471615)
CONLON FRANTZ PHELAN & VARMA LLP
1818 P Street, N.W. #400
Washington, D.C. 20036
Telephone: (202) 331-7050
Facsimile: (202) 331-9306
avarma@conlonfrantz.com

Kent H. Holsinger (*Pro Hac Vice* Applicant)
CO Bar No. 33907
HOLSINGER LAW, LLC
350 Indiana Street, Suite 640
Golden, CO 80401
Telephone: (303) 577-4621
Facsimile: (303) 496-1025
kent@holsingerlaw.com

*Attorneys for Intervenor-Applicants*
*Colorado Cattlemen's Association, Partnership for the West and Western Conservation Coalition*