# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

COUNTY OF SAN MIGUEL, COLORADO,  )
et al.,                          )
                                 )
            Plaintiffs,          )
                                 )
      v.                         )          Civil Action No. 06-1946 (RBW)
                                 )
MACDONALD, et al.,               )
                                 )
            Defendants,          )
                                 )
and                              )
                                 )
COLORADO CATTLEMEN'S ASSOCIATION, )
PARTNERSHIP FOR THE WEST, and     )
WESTERN CONSERVATION COALITION    )
                                 )
            Intervenor-Applicants. )
_____ )

## MEMORANDUM OPINION

On November 14, 2006, the plaintiffs, the County of San Miguel, Colorado and nine

conservation, birding, and governmental-accountability organizations, mostly non-profit, filed a

complaint pursuant to the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(1)(C) (2000)

and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706 (2000), challenging the

defendants' (Julie MacDonald,[1] Dick Kempthorne,[2] and H. Dale Hall[3]) determination that listing

_____

[1] Julie MacDonald is being sued in her official capacity as Deputy Assistant Secretary for Fish & Wildlife and Parks Service in the United States Department of the Interior. Complaint ("Compl.") ¶ 22.

[2] Dick Kempthorne is being sued in his official capacity as Secretary of the Department of the Interior. Id. ¶ 23.

[3] H. Dale Hall is being sued in his official capacity as Director of the United States Fish and
(continued...)

1

the Gunnison sage-grouse as "endangered" or "threatened" under the ESA is "not warranted."[4]

("Compl.") ¶ 1; see generally  Final Listing Determination for the Gunnison Sage-Grouse as

Endangered or Threatened, 71 Fed. Reg. 19954-01 (Apr. 18, 2006) (to be codified at 50 C.F.R.

pt. 17) ("Final Determination").  The plaintiffs seek declaratory relief that sets aside the United

States Fish and Wildlife Service's ("FWS") "not warranted" finding and requires the issuance of

an emergency rule listing the Gunnison sage-grouse as "endangered" under the ESA until normal

listing procedures are completed pursuant to the citizen suit provision of the ESA, 16 U.S.C. §

1540(g)(1)(C), and the judicial review provisions of the APA, 5 U.S.C. §§ 702, 706.[5] Compl. ¶¶

2-3 and C, E at 23.

Currently before this Court is a motion to intervene as defendants filed by intervenor-

applicants Colorado Cattlemen's Association ("Cattlemen"), Partnership for the West

("Partnership"), and Western Conservation Coalition ("Western") pursuant to Federal Rule of

Civil Procedure 24(a).[6]  Intervenor-Applicants Colorado Cattlemen's Association, Partnership for

---

[3](...continued)
Wildlife Service, a component of the Department of the Interior. Id. ¶ 24.

[4] The nine conservation, birding, and government accountability organizations that have joined
the County of San Miguel, Colorado in this action are Sagebrush Sea Campaign, Center for Native
Ecosystems, Forest Guardians, The Larch Company, Sinapu, Center for Biological Diversity, Public
Employees for Environmental Responsibility, Black Canyon Audubon Society, and Sheep Mountain
Alliance. See id. ¶¶ 10-18.  These organizations, inter alia, are committed to the conservation and
recovery of the Gunnison sage-grouse. See id.

[5] Specifically, the plaintiffs request that the Court find that the FWS's determination that listing
the Gunnison sage-grouse as threatened or endangered was "not warranted" (1) violates Section
4(b)(3)(A) of the ESA and (2) is arbitrary, capricious, an abuse of discretion, and constitutes agency
action unlawfully withheld under Section 706 of the APA.  Compl. ¶¶ C, E at 23; see 16 U.S.C. §
1533(b)(3)(A)(2000); 5 U.S.C. § 706.

[6] Alternatively, the intervenor-applicants request intervention under Rule 24(b), which allows
(continued...)

the West, and Western Conservation Coalition's Motion for Leave to Intervene as Defendants

("Intervenor-Applicants' Mot.").[7]  The motion is unopposed by the current defendants,

Intervenor-Applicants' Mem. at 18, but is opposed by the plaintiffs, see Pls.' Opp'n.

For the reasons set forth below, the intervenor-applicants' motion is granted.

## I. Factual Background

*A. The Endangered Species Act*

The ESA, 16 U.S.C. §§ 1531 et seq. (2000), is intended, inter alia, "to provide a means

whereby the ecosystems upon which endangered species and threatened species depend may be

conserved [and] to provide a program for the conservation of such endangered species and

threatened species." 16 U.S.C. § 1531(b).  The Supreme Court has stated that "[t]he plain intent

of Congress in enacting [the ESA] was to halt and reverse the trend toward species extinction,

---

[6](...continued)
permissive intervention "when an applicant's claim or defense and the main action have a question of law
or fact in common." Fed.R.Civ.P. 24(b).  However, "[i]n exercising its discretion the [C]ourt shall
consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the
original parties." Id.  Permissive intervention, therefore, may be granted if the prospective intervenor
presents "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim
or defense that has a question of law or fact in common with the main action." Equal Employment
Opportunity Comm'n v. Nat'l Children's Ctr., Inc., 146 F.3d 1042, 1046 (D.C. Cir. 1998) (citation
omitted).  The Court enjoys considerable discretion in deciding whether intervention should be
permitted. Id. at 1048. However, the Court need not analyze the intervenor-applicants' motion under this
theory because it concludes that the intervenor-applicants may intervene as a matter of right. See Fund
for Animals, Inc. v. Norton, 322 F.3d 728, 731 (D.C. Cir. 2003) ("Because we conclude that the
NRD is entitled to intervene as of right, we need not address the issue of permissive intervention.")
(citation omitted).

[7] The following papers have been submitted in connection with this motion: (1) Memorandum of
Points and Authorities in Support of Intervenor-Applicants Colorado Cattlemen's Association,
Partnership for the West, and Western Conservation Coalition's Motion for Leave to Intervene as
Defendants ("Intervenor-Applicants' Mem."), (2) Plaintiffs' Memorandum in Opposition to Motion of
Colorado Cattlemen, et al., to Intervene ("Pls.' Opp'n") and (3) Intervenor-Applicants Colorado
Cattlemen's Association, Partnership for the West, and Western Conservation Coalition's Reply
Memorandum in Support of Motion for Leave to Intervene as Defendants ("Intervenor-Applicants'
Reply").

whatever the cost." <u>Tennessee Valley Auth. v. Hill</u>, 437 U.S. 153, 184 (1978).

The ESA protects species listed under the Act as "endangered" or "threatened" in several ways. The Act: (1) requires the FWS to develop and implement a recovery plan for listed species, 16 U.S.C. § 1533(f); (2) requires all federal agencies to carry out their programs for the conservation of the listed species and not jeopardize the continued existence of listed species, 16 U.S.C. § 1536(a)(1), (a)(2); and (3) forbids anyone from "taking" listed species by any means, except where authorized, 16 U.S.C. §§ 1538, 1539, 1532(19); 50 C.F.R. §17.31.

The ESA charges the Secretary of the United States Department of the Interior ("Secretary") with determining whether a species is "endangered" or "threatened," and when such a determination is made, to designate its "critical habitat." 16 U.S.C. § 1533. The Secretary has delegated the responsibility of these determinations to the FWS. 50 C.F.R. § 402.01(b).

Protection of a species does not commence under the ESA until the species is listed as either endangered or threatened. See 16 U.S.C. § 1533(f) (requiring the development of a recovery plan for listed species). Under the ESA, a species is endangered if it "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is threatened if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." <u>Id.</u> § 1532(20). Once one of these designations is made, the ESA requires all federal agencies to verify that any action they authorize, fund, or perform "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary . . . to be critical." 16 U.S.C. § 1536(a)(2).

A species may be classified as endangered or threatened by the Secretary's own initiative

4

or by a petition to list a species submitted by the public to the Secretary. 16 U.S.C. § 1533(a) &

(b).  When the FWS receives a petition to list a species submitted by the public, within 90 days of

receiving the petition, "to the maximum extent practicable," the FWS must determine "whether

the petition presents substantial scientific or commercial information indicating that . . . [a

listing] may be warranted." 16 U.S.C. § 1533(b)(3)(A).  If the FWS determines that listing based

upon a petition "may be warranted," the FWS must start a review of the status of the species, id.,

which must include (1) publication of the "may be warranted" determination in the Federal

Register, id. § 1533(b)(3)(B)(ii), and (2) an opportunity for public review and comments on new

or revised recovery plans[8], id. § 1533(f)(4).  At the conclusion of the review period, the FWS

must determine whether the petition for the listing of a species is (1) "not warranted," id. §

1533(b)(3)(B)(I), (2) "warranted," id. § 1533(b)(3)(B)(ii), or (3) "warranted . . . but . . .

precluded" because of, inter alia, other "pending proposals to determine whether any species is

an endangered or a threatened species . . . ." id. § 1533(b)(3)(B)(iii).  If the listing is warranted,

the FWS must (1) promptly publish a proposed regulation in the Federal Register, 16 U.S.C. §

1533(b)(3)(B)(ii), and (2) within one year publish a final regulation or withdraw the proposed

regulation, id. § 1533(b)(6)(A)(I).  The designation of the critical habitat of an endangered or

threatened species must be made at the same time.[9]  Id. § 1533(b)(6)(A)(ii).  If the FWS

determines that the listing is "not warranted," it must also publish that determination in the

---

[8] A recovery plan is a plan developed and implemented by the Secretary "for the conservation and survival of endangered species and threatened species listed pursuant to [16 U.S.C. § 1533]. . . ."  16 U.S.C. §1533(f)(1).

[9] The ESA defines "critical habitat" as a habitat that is "essential to the conservation of the species," 16 U.S.C. §§ 1532(5)(A)(I), (A)(ii), with "conservation" defined as the use of methods necessary "to bring any [listed species] to the point at which the measures provided pursuant to this chapter are no longer necessary," id. § 1532(3).

Federal Register Id. § 1533(b)(3)(B)(I). The FWS's "not warranted" determination is subject to judicial review. Id. §1533(b)(3)(C)(ii).

*B. The Gunnison Sage-grouse*

"The sage-grouse is a brownish-gray bird known for its unique mating ritual and the colorful . . . features on the male birds," Compl. ¶ 25, which is a "distinct species" from a bird with a smaller wing span known as the Gunnison sage-grouse, id. ¶ 26. This distinct sub-species of the Gunnison sage-grouse is currently found primarily in the Gunnison Basin in southwestern Colorado.  Id. ¶¶ 26, 31.  The Gunnison sage-grouse relies upon sagebrush habitats "throughout the year" for "food, shelter, and cover." Id. ¶¶ 28-29.

According to the FWS, "[t]he current range of [the]Gunnison sage-grouse is about 8.5 percent of its historic range."[10]  Id. ¶ 30, see id. ¶ 68.  In 2004, the Colorado Division of Wildlife "estimated that the rangewide Gunnison sage-grouse population declined between 42 and 90 percent over the last 50 years." Id. ¶ 31. The plaintiffs represent that  factors contributing to the decline of the species include "habitat loss, fragmentation, and degradation from numerous human activities" such as domestic livestock grazing. Id. ¶ 32.  The National Audubon Society has identified the Gunnison sage-grouse as one of the country's ten most endangered birds. Id. ¶ 33.

*C. Listing of the Gunnison Sage-grouse*

On January 25, 2000, the plaintiffs submitted a petition to the Secretary to list the Gunnison sage-grouse as endangered under the ESA.  Id.  Approximately a month later, the

---

[10] According to the plaintiffs, "the historic range of the Gunnison sage-grouse likely included southwestern Colorado, southwestern Kansas, northwestern Oklahoma, northern New Mexico, northern Arizona, and southeastern Utah." Id. ¶ 27.

plaintiffs received a written response from Ralph Morgenweck, Regional Director of the FWS

Mountain-Prairie Region, stating that the FWS had internally designated the Gunnison sage-

grouse as a candidate species a week before the FWS-Mountain Prairie Region received the

petition "by relying on provisions in the agency's 'Petition Management Guidance' ("PMG")

Policy."[11]Id.  ¶¶ 46-47.

The defendants' review of the Gunnison sage-grouse's classification status has already

been the subject of several court actions claiming that the FWS was not following the mandate of

the ESA.[12]  On November 14, 2005, in one of those actions, Norton II, "the parties filed a

stipulated settlement agreement with the Court that required [the] defendants to publish a listing

determination for [the] Gunnison sage-grouse on or before March 31, 2006." Compl. ¶ 63.

However, the plaintiffs allege that "[i]n December 2005, after several drafts of a proposed rule

had been prepared," the FWS "drastically reversed course and began to draft a 'not warranted'

listing determination." Compl. ¶ 64.

On April 18, 2006, the defendants published the "not warranted" listing that is at issue in

this case.  Id. ¶ 66; see Final Determination at 19954.  The plaintiffs contest this listing

determination primarily on the grounds that the FWS did not "rely solely on the best scientific

---

[11] The PMG Policy was subsequently declared invalid, and the defendants in an earlier action were enjoined by this Court from applying the policy. See June 2, 2004 Order at 6-7, American Lands Alliance v. Norton (" Norton I"),  No. 00-2339 (D.D.C. 2003) (RBW).

[12] The Court will not discuss in detail the factual background of the prior litigation or the listings made by the FWS for the Gunnison sage-grouse because those facts are not directly relevant in resolving the current motion before the Court. Those prior cases are the following: Norton I, No. 00-2339 (D.D.C. 2003) (RBW) (challenging the FWS's failure to issue a 90-day finding in response to a  petition to list the Gunnison sage-grouse pursuant to the ESA), and American Lands Alliance v. Norton (" Norton II"), No. 04-0434 (D.D.C. 2005) (RBW) (challenging the "warranted but precluded" finding of the FWS for the Gunnison sage-grouse pursuant to the ESA and the APA).

and commercial data available," as required by 16 U.S.C. § 1533(b)(1)(A). Compl. ¶¶ 72-73. As noted above, the plaintiffs seek relief in several forms, including a request that this Court set aside the FWS's final determination that listing the Gunnison sage-grouse as threatened or endangered under the ESA is "not warranted." Id. ¶ C at 23-24.

*D. The Intervenor-Applicants*

Intervenor-applicant Cattlemen "is a non-profit trade organization representing the social, economic and educational interests of more than 12,000 beef producers throughout the State of Colorado." Intervenor-Applicants Mot., Declaration of Terry Fankhauser in Support of Motion to Intervene of Colorado Cattlemen's Association ("Fankhauser Decl.") ¶ 3. Members of Cattlemen are farmers and ranchers who depend upon farming and ranching for their livelihoods and who use land within the range of the Gunnison sage-grouse. Id. ¶¶ 3-4. Members use private lands, as well as federally-managed lands to conduct their businesses. Id. Cattlemen asserts that its members' interests will be impaired by withdrawal of the FWS determination and listing of the Gunnison sage-grouse as "not warranted" for several reasons. First, Cattlemen contends that a listing of the Gunnison sage-grouse as threatened or endangered under the ESA would negatively impact members by imposing restrictions on the use of their own land, thereby potentially limiting their ability to raise cattle and produce hay. Intervenor-Applicants' Mem. at 3, 4. Second, its members will purportedly be significantly impacted because "ESA compliance may restrict the ability to use water rights held by Cattlemen's members that originate on federal lands," thereby limiting their water supplies for irrigation, Id. at 3. Third, Cattlemen alleges that compliance with the ESA may "reduce the number of cattle that [the government] will permit to graze upon the national forests or federal lands or the amount of time that the cattle may graze."

8

Id.  Finally, the FWS's listing of the Gunnison sage-grouse as threatened or endangered will purportedly "reduce profitability and further lower profit margins and, ultimately, the financial viability of Cattlemen's members." Id.  Therefore, Cattlemen contends that alternatives, other than setting aside the FWS's listing determination, "exist that satisfy the needs of [the] species without impacting land use and the rights of [its] members." Fankhauser Decl. ¶¶ 6, 8.

Intervenor-applicant Partnership "is a non-profit organization . . . with more than 600 companies, associations, coalitions and individuals who collectively employ or represent more than one million citizens across America" in the following sectors: farming and ranching, coal, timber and wood products, utilities, hard rock mining, oil and gas, sportsmen and hunters, and small businesses. Intervenor-Applicants Mot. at 4 (quoting Declaration of Paul Poister in Support of Motion to Intervene of the Partnership of the West ("Poister Decl.") ¶ 3).  The organization "seek[s] to restore a common sense balance between economic growth and environmental conservation." Poister Decl. ¶ 3.  Many Partnership members, including but not limited to, members who operate mining, oil and gas, utility, agricultural and timber harvesting operations on public lands, hold or need federal permits and authorizations from federal agencies that manage land and mineral resources in the range of the Gunnison sage-grouse.  Id. ¶ 4.  The Partnership claims that an ESA listing of the Gunnison sage-grouse as threatened or endangered would negatively impact the Partnership by (1) "impairing existing conservation efforts, of which the Partnership's members are a part," id. ¶ 5, and (2) "increas[ing] regulatory restrictions on agriculture, oil and gas, utilities, mining, timber harvests, recreation, and other activities on federal lands," resulting in significant delays in processing permits to conduct business on private or public land due to regional consultations with the FWS over the needed permits, thereby, in

9

turn, resulting in financial hardship on the Partnership's members, id. ¶ 6, and (3) requiring the amendment of federal management plans in ways that would restrict access to federal lands and impair the Partnership members' ability to conduct their businesses, id.

Intervenor-applicant Western "is a non-profit organization dedicated to wildlife conservation through local and state conservation efforts while maintaining the highest scientific standards, private property rights, agriculture and a strong economy." Intervenor-Applicants Mot., Declaration of Pam Paris in Support of Motion to Intervene of the Western Conservation Coalition ("Paris Decl.") ¶ 3.  Western's members include "landowners, realtors, agricultural producers, trade organizations, contractors, and other businesses in the southwestern Colorado range of the Gunnison sage[-]grouse." Id. ¶ 4.  Western supports local and state conservation efforts for the Gunnison sage-grouse as opposed to seeking federal listing under the ESA. See id. ("Western believes a federal listing will hinder such local efforts as well as adversely impact the interests of Western's members."); see also Intervenor-Applicants' Mot., Letter to U.S. Rep. John Salazar and Letter to FWS Director Dale Hale (letters urging Congress and the FWS to support existing state and local conservation efforts rather than pursuing an unnecessarily restrictive federal listing of the Gunnison sage-grouse). According to Western, listing the Gunnison sage-grouse as threatened or endangered would result in additional regulatory requirements under the ESA, causing significant delays and hardship to its members, including, for example, construction project delays and additional costs to remove snow at construction sites due to reduced time during the summer months to conduct construction activities. Paris Decl. ¶ 4.

## II. Standard of Review

Federal Rule of Civil Procedure 24(a) sets forth the requirements for intervention as of right and provides that:

> [u]pon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. Rule 24(a)(2).  In evaluating motions for intervention as of right, this Court must consider

> the following four factors: (1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is as situated that the deposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by the existing parties.

Fund for Animals, 322 F.3d at 731 (quoting Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1074 (D.C. Cir. 1998)) (internal quotation marks omitted); see also SEC v. Prudential Sec., Inc., 136 F.3d 153, 156 (D.C. Cir. 1998); Environmental Defense  v. Leavitt, 329 F. Supp. 2d 55, 65-66 (D.D.C. 2004).  Further, a prospective intervenor must demonstrate that it has Article III constitutional  standing to intervene by showing "(1) injury-in-fact, (2) causation, and (3) redressability."  Fund for Animals, 322 F.3d at 733 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)) (additional citation omitted); see also Environmental Defense, 329 F. Supp. 2d at 66.

## II. Legal Analysis

As noted above, a party seeking to intervene as of right must demonstrate that it has

standing under Article III of the United States Constitution.  See Military Toxics Project v. EPA,

146 F.3d 948, 953 (D.C. Cir. 1998); Mova Pharm. Corp., 140 F.3d at 1074.  "[B]ecause a Rule

24 intervenor seeks to participate on an equal footing with the original parties to the suit, [it]

must satisfy the standing requirements imposed on those parties." Fund for Animals, 322 F.3d at

732 (quoting City of Cleveland v. NRC, 17 F.3d 1515, 1517 (D.C. Cir. 1994)).  Since a

prospective intervenor's Article III standing presents a material question as to this Court's

jurisdiction, Sierra Club v. EPA, 292 F.3d 895, 898 (D.C. Cir. 2002), the Court must address the

prospective intervenors' standing in this action before considering the factors for evaluating their

intervention as of right.[13]

A. Standing

The intervenor-applicants assert that they have standing as associations to intervene in

this action because (1) their "members have standing to sue in their own right; (2) the interests at

stake [in this litigation] are germane to the organizations' purposes; and (3) neither the claim

asserted nor the relief sought requires [their]  members to participate directly in [this] lawsuit."

Intervenor-Applicants Mem. at 14.  In opposition, the plaintiffs respond that the intervenor-

applicants fail to satisfy Rule 24(a)'s Article III standing requirement of injury-in-fact, having

failed to show that their "asserted injuries - i.e., of 'significant delay' and 'financial hardship', . .

. are . . . 'fairly traceable' to the 'not warranted' listing decision but rather to speculative events

---

[13] As discussed in Environmental Defense, "the requirements for Rule 24(a) and [for Article III]
standing are not co-extensive" in this Circuit. 329 F. Supp. 2d at 66 n.7. As the District of Columbia
Circuit has stated, satisfying Rule 24(a) also satisfies Article III standing.  Roeder v. Islamic Republic of
Iran, 333 F.3d 228, 233 (D.C. Cir. 2003). On the other hand, however, a person who has constitutional
standing fulfills only the second of the four requirements for intervention as of right under Rule 24(a).
See Jones v. Prince George's Co., Md., 348 F.3d 1014, 1018-19 (D.C. Cir. 2003) (assessing existence of
impairment of interest and adequacy of representation after concluding that constitutional standing had
been satisfied).

that will be caused in the future if at all, by yet-to-be-published regulations." Pls' Opp'n at 17.

For the reasons set forth below, the Court finds that the intervenor-applicants have constitutional

standing.

> Under Article III of the United States Constitution,
>
> an association . . . has standing to sue on behalf of its members only if (1) at least
> one of its members would have standing to sue in his own right, (2) the interests
> the association seeks to protect are germane to its purpose, and (3) neither the
> claim asserted nor the relief requested requires that an individual member of the
> association participate in the lawsuit.

Sierra Club, 292 F.3d at 898; see Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333,

342-43 (1977). And, "[t]he 'irreducible constitutional minimum of standing contains three

elements': (1) injury-in-fact, (2) causation, and (3) redressablity." Sierra Club, 292 F.3d at 898

(quoting Defenders of Wildlife, 504 U.S. at 560).[14]

 Despite the plaintiffs' challenge to the adequacy of the intervenor-applicants' injury-in-

fact claims, the Court finds that the intervenor-applicants have satisfied the constitutional

minimum requirements of standing. Their allegations of expected increase in regulatory

restrictions on their members' use of public and private land, including their members' access to

federal lands, impairment of their members' existing and future conservation efforts, and a

reduction in the profitability of their members' business concerns, constitute concrete and

---

[14] The intervenor-applicants' argument that the Defenders of Wildlife requirements are irrelevant
to this motion, see Intervenor-Applicants' Reply at 13 (claiming Defenders of Wildlife "does not relate to
intervention at all"), is incorrect. As explained by the District of Columbia Circuit, "because a Rule 24
intervenor seeks to participate on an equal footing with the original parties to the suit, he must satisfy the
standing requirements imposed on those parties." Fund for Animals, 322 F.3d at 732 (quoting City of
Cleveland v. NRC, 17 F.3d 1515, 1517 (D.C. Cir. 1994)). Fund for Animals, which the intervenor-
applicants cite in their filing, see Intervenor-Applicants' Reply at 12, does in fact analyze the standing of
the party seeking to intervene as a defendant under the Defenders of Wildlife requirements. See Fund for
Animals, 322 F.3d at 732-33. And, this Court is bound by this Circuit precedent.

imminent injuries. For standing purposes, the injury a party claims must be "distinct and palpable, . . . and not abstract or conjectural or hypothetical." Allen v. Wright, 468 U.S. 737, 751 (1984) (internal quotation marks and citations omitted). "Although the fact that harm or injury may occur in the future is not necessarily fatal to a claim of standing[,] . . . [such circumstances can] lessen the concreteness of the controversy and thus mitigate [sic] against a recognition of standing." United Transp. Union v. I.C.C., 891 F.2d 908, 913 (D.C. Cir. 1998) (quoting Harrington v. Bush, 553 F.2d 190, 208 (D.C. Cir.1977)) (internal quotation marks omitted). Thus, when a party alleges future injury alone, the party "must demonstrate a realistic danger of sustaining a direct injury . . . ." Id. (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)) (citation omitted).

Here, the intervenor-applicants have demonstrated that there is a real likelihood they will sustain a direct injury if the plaintiffs prevail in obtaining any of the relief they are requesting. The Gunnison sage-grouse is the subject of the conservatory regulations sought by the plaintiffs, and the intervenor-applicants benefit from the FWS's current "not warranted" determination because their land use is unfettered by regulations designed to protect the habitat of the Gunnison sage-grouse. Moreover, if the Court were to grant the relief the plaintiffs seek, the threat of greater regulation of the lands the intervenor-applicants' members use and rely upon would be imminent and result in concrete injury. As stated in Sierra Club v. EPA, "if the complainant is 'an object of the action (or forgone action) at issue' - as is the case usually in review of a rulemaking and nearly always in review of an adjudication - there should be 'little question that the action or inaction has caused him injury, and that a judgment preventing or requiring action will redress it." 292 F.3d at 900 (quoting Defenders of Wildlife, 504 U.S. at 561-62). While the

14

intervenor-applicants are not themselves the topic of the challenged agency action, the Gunnison sage-grouse and its habitat are integral components of the environmental make-up of their members' property or the public property they utilize for their livelihoods and business operations. Intervenor-Applicants' Mem. at 2-3.  The Circuit Court has found that it sees "no meaningful distinction between a regulation that directly regulates a party and one that directly regulates the disposition of a party's property."  Fund for Animals, 322 F.3d at 734 (footnote omitted); see Horsehead Res. Dev. Co. v. Browner, 16 F.3d 1246, 1259 (D.C. Cir. 1994) (finding that environmental organizations with members living in the affected areas "clearly do have standing").  Hence, the injuries-in-fact that the intervenor-applicants' members claim they will suffer are fairly traceable to the judicial intervention (setting aside the FWS's "not warranted" finding for listing the Gunnison sage-grouse as an endangered or threatened species ) and the regulatory relief (the issuance of an emergency rule by the FWS listing the Gunnison sage-grouse as "endangered" or "threatened" under the ESA) that the plaintiffs seek in this action.  Further, it is likely that a decision favorable to the intervenor-applicants would prevent their members from incurring the injuries they fear, including, but not limited to, increased regulatory restrictions, impairment to existing and future conservation efforts of their members, and a reduction in the profitability of their members' businesses.

    This case is similar to Fund for Animals.  There, the District of Columbia Circuit considered a similar set of circumstances when evaluating the District Court's denial of the National Resources Department of the Ministry of Nature and Environment of Mongolia's ("NRD") motion to intervene in an action alleging violations of the ESA and APA.  Fund for Animals, 322 F.3d at 731.  The plaintiffs, the Fund for Animals and other organizations

dedicated to wildlife conservation, challenged the Secretary of the Interior and the Director of the FWS for "failing to list the argali sheep as an endangered species in Mongolia, Kyrgyzstan, and Tajikistan, and by issuing hundreds of permits for sport hunters to import killed argali into the United States as 'trophies.'" Id. at 730. In Fund for Animals, "[t]he plaintiffs asked the court, inter alia, to direct the defendants to list the argali as an endangered species in those countries, to declare unlawful all outstanding permits for the import of argali sheep, and to enjoin the defendants from issuing additional permits." Id. The NRD, an agency of the Mongolian government responsible for "implementing the policy and decision of the Government on rational utilization of natural resources, rehabilitation, and protection, including the country's 'tourist hunting program,'" id. at 731, sought intervention, asserting that it satisfied the requirements for standing under Article III "because fees paid by sport hunters are the primary source of funding for its argali conservation program," id. at 733. Therefore, the NRD argued that if the Court ruled in favor of the plaintiffs in that case and barred American hunters from bringing the argali sheep they killed home as trophies, "some hunters [would] not travel to Mongolia to hunt the argali, and the revenues that support the conservation program [would] decline." Id. In reversing the District Court, the Circuit found the NRD's argument persuasive and ruled that "[t]he threatened loss of tourist dollars, and the consequent reduction in funding for Mongolia's conservation program, constitute[d] a concrete and imminent injury . . . [that] is fairly traceable to the regulatory action . . . [and therefore, it was] likely that a decision favorable to the NRD would prevent that loss from occurring." Id. at 733.

Here, as previously noted, like in Fund for Animals, the Gunnison sage-grouse is the subject of the sought-after regulation and the intervenor-applicants' members benefit from the

FWS's current "not warranted" determination. If the Court grants the relief that the plaintiffs

seek, the threat of greater regulation of the lands the intervenor-applicants' members use and rely

upon for their livelihoods and business operations would be imminent and would result in

concrete injury to their members. Hence, the intervenor-applicants' members' economic status

would be threatened. Therefore, the Court finds that the record in this case at this point in the

proceedings adequately demonstrates that the intervenor-applicants have constitutional

standing.[15]

B. Elements of Test for Intervention As of Right

(1) Timeliness

The intervenor-applicants timely filed their application for intervention on March 2, 2007,

see Intervenor-Applicants' Mot. (Docket Entry No. 14), and the plaintiffs concede that the

application was timely filed, Pls' Opp'n at 4. Therefore, timeliness of the intervenor-applicants'

application for intervention is not at issue in this case.

*(2) Legally Protected Interests*

The intervenor-applicants claim an interest in the subject matter of this case because a

---

[15] The District of Columbia Circuit has explained that under the Supreme Court's ruling in Defenders of Wildlife,

> the burden of production a[n] [intervenor-applicant] must bear in order to show that it has standing . . . varies with the procedural context of the case. At the pleading stage, [which is the current procedural posture of this case,] general factual allegations of injury resulting from the [relief the plaintiff is seeking] may suffice, and the [C]ourt [must] presum[e] that general allegations embrace the specific facts that are necessary to support the claim.

Sierra Club, 292 F.3d at 898 (quoting Defenders of Wildlife, 504 U.S. at 561); see c.f. Fund for Animals, 322 F.3d at 733-34 (concluding that identical standing analysis for "any party" equally applies to "prospective intervenor[s]," but declining to decide "whether . . . [a] motion to intervene is closer to a motion for summary judgment or to a pleading" because the case involved a challenge to administrative action, and standing "in many if not most [such] cases[,] . . . is self evident") (citation omitted).

listing or reversal of the "not warranted" determination "would subject [the applicants' members] to the requirements of the ESA including section 7 consultations with the FWS, reinitiation of consultation, increased restrictions on the use of public lands, potential denial of permit renewals, significant delays in the conduct of their businesses and financial hardship." Intervenor-Applicants Mem. at 11-12. In opposition, the plaintiffs respond that the intervenor-applicants' broadly asserted interests do not support intervention as of right because those "interests do not relate to <u>defendants'</u> liability under the ESA . . . ." Pls' Opp'n at 6. In their reply, the intervenor-applicants contend that their members' interests in the land that would be impacted by a decision to list the Gunnison sage-grouse, and the resulting economic consequences in an ESA case fall within the "zone of interests" test, making their intervention appropriate. Intervenor-Applicants' Reply at 8-10. For the reasons set forth below, the Court agrees with the intervenor-applicants.

The District of Columbia Circuit has held that by satisfying the requirements of standing a party can demonstrate that a legally protected interest exists. <u>See</u> <u>Jones</u>, 348 F.3d at 1018-19 (reasoning that "because [the intervenor-applicant] ha[d] suffered a cognizable injury sufficient to establish Article III standing, she also ha[d] the requisite interest under Rule 24(a)(2)") (citations omitted); <u>see also</u> <u>Mova Pharm.</u>, 140 F.3d at 1076 (explaining that the party seeking intervention "need not show anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for purposes of Rule 24(a)") (citations omitted). This Court having determined already that the intervenor-applicants have constitutional standing, and the District of Columbia Circuit having found that standing alone is sufficient to establish that they have "an interest relating to the property or transaction which is the subject of th[is] action," Fed.R.Civ.P. 24(a)(2); <u>see</u> <u>Jones</u>, 348 F.3d at 1018-19; <u>Mova</u>

18

Pharm., 140 F.3d at 1076 , the intervenor-applicants have satisfied the second requirement for intervention as of right. The property at issue in this case being public and private lands within the range of the Gunnison sage-grouse and this action being a challenge to the FWS's listing decision for the Gunnison sage-grouse as "not warranted" under the ESA clearly vest the intervenor-applicants with the requisite interest in this litigation for Rule 24(a) intervention. See Foster v. Gueory, 655 F.2d 1319, 1324 (D.C. Cir. 1981) ("An intervenor's interest is obvious when he asserts a claim to property that is the subject matter of the suit . . . .") (citation omitted). Accordingly, the Court concludes that the intervenor-applicants have legally protected interests in the instant case.

    *(3) Threat to Impair the Legally Protected Interests*

    The intervenor-applicants contend that their interests and the interests of their members will be adversely affected by the type of relief the plaintiffs are seeking because listing the Gunnison sage-grouse as threatened or endangered would "impose section 7 consultation and section 9 take prohibitions." Intervenor-Applicants Mem. at 13-14.  The intervenor-applicants further claim that success of the plaintiffs in having the Gunnison sage-grouse listed as they demand "could also reinitiate consultation on existing permits . . . and other authorizations held by the [i]ntervenor-[a]pplicants." Id. at 14.  In opposition, the plaintiffs argue that lawsuits such as this one do not result in an order compelling the defendants to actually list the subject species, Pls' Opp'n at 7, and any proposed rule would be followed by a 60-day public comment period during which the intervenor-applicants could participate, id. at 9-10. Further, the plaintiffs contend that "the chain of events that [the] applicants rely on here . . . is attenuated and speculative, and cannot support intervention." Id. at 11.  Replying to the plaintiffs' argument, the

intervenor-applicants assert that "[e]ven if [the Court simply] revers[es] and remand[s] . . . the FWS's determination," their members will still be harmed by the expenditure of "additional time and resources they would ordinarily devote to their businesses." Intervenor-Applicants' Reply at 7. The Court agrees with the intervenor-applicants.

The intervenor-applicants are "so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect [their] interest." Fed. R. Civ. P. 24(a)(2). Despite the plaintiffs' argument that the intervenor-applicants would have an opportunity to weigh in during the review period of a proposed rule to classify the Gunnison sage-grouse as either endangered or threatened or to file suit upon issuance of a new final adoption of a rule, it is clear that the process of regaining a "not warranted" determination, should the plaintiffs succeed in the instant case, would be "difficult and burdensome." Fund for Animals, 322 F.3d at 735 (citation omitted). For instance, if the FWS's determination is set aside and it has to conduct the year-long review period, including the 60-day public comment period, the intervenor-applicants would have to file a separate action if the FWS then concludes that listing the Gunnison sage-grouse as threatened or endangered is warranted. The positions of the parties, including those of the intervenor-applicants, in such a proceeding would likely be duplicative of their current positions. Moreover, "[i]t is not enough to deny intervention under [Rule] 24(a)(2) because the applicants may vindicate their interests in some later, albeit more burdensome, litigation." Natural Res. Def. Council v. Costle, 561 F.2d 904, 910 (D.C. Cir. 1977). Also, as the intervenor-applicants further argue, the imminent threat of lost earnings if this Court orders the FWS to issue an emergency rule listing immediately the Gunnison sage-grouse as "endangered," pending remand of the challenged determination, would immediately

20

impair the intervenor-applicants' members economic interests.[16]

      *(4) Adequate Representation of the Applicants' Interests*

      The Court must finally determine whether the intervenor-applicants' interests are "adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). The intervenor-applicants assert that their interests are inadequately represented because (1) the plaintiffs seek the reversal of the FWS's "not warranted" determination and an emergency listing of the Gunnison sage-grouse under the ESA while the intervenor-applicants request that this Court uphold the FWS's "not warranted" determination and (2) the intervenor-applicants' interests consist of pursuing their economic livelihoods on private and public lands, whereas, the primary interests of the FWS are the protection and conservation of species, including the Gunnison sage-grouse, as mandated by the ESA. Intervenor-Applicants' Mem. at 16.  Further, the intervenor-applicants note that they take views different than the FWS on what activities may impact the Gunnison sage-grouse or its habitat.  Id.  In opposition, the plaintiffs argue the intervenor-applicants fail to meet their burden of proving inadequate representation. Pls' Opp'n at 14.  The plaintiffs claim that the intervenor-applicants have proven no more than a "slight difference" in interests between them and the current defendants, especially considering that both parties have the same interest in upholding the "not warranted" determination.  Id. at 14-15. In their reply, the intervenor-applicants contend that the plaintiffs bear the burden of proving the adequacy of  representation and allege that they have

---

[16] In their opposition, the plaintiffs acknowledges that "lawsuits such as this one usually [do not] result in. . . an Order compelling defendants to actually list the species in question" and cite many cases in which this jurisdiction has vacated and remanded an agency determination concerning various species. Pls.' Opp'n at 7. As the intervenor-applicants point out, however, the plaintiffs chose to seek relief in the form of an order requiring the FWS to issue an emergency listing of the Gunnison sage-grouse. Intervenor-Applicants' Reply at 4; see Compl. ¶ E at 24. The Court, therefore, must consider whether such a result would harm the interests of the intervenor-applicants.

not done so.  Reply at 11.  Further, the intervenor-applicants argue that the FWS cannot

adequately represent the intervenor-applicants' economic interests at the same time they also seek

to represent the general public's interest.  Id.  For the following reasons, the Court finds that the

intervenor-applicants have satisfied the final factor for intervention as of right.

The Supreme Court has held that inadequacy of representation is satisfied "if the applicant

shows that representation of [its] interest 'may be' inadequate; and the burden of making that

showing should be treated as minimal." Trbovich v. United Mine Workers of Am., 404 U.S. 528,

538 n.10 (1972) (citation omitted); see Dimond v. District of Columbia, 792 F.2d 179, 192 (D.C.

Cir. 1986) (stating that under Trbovich the requirement of showing inadequate representations "is

not onerous").  The District of Columbia Circuit has "often concluded that government entities do

not adequately represent the interests of aspiring intervenors." Fund for Animals, 322 F.3d at 736

(footnote omitted).  The Circuit Court has reached this conclusion because government entities are

usually charged with "represent[ing] the interests of the American people," whereas aspiring

intervenors, like the intervenor-applicants here, are dedicated to representing their personal

interests or the interests of their members or members' businesses. Id.; see, e.g., Costle, 561 F.2d

at 912-13; Smuck v. Hobson, 408 F.2d 175, 181 (D.C. Cir. 1969); Friends of Animals v.

Kempthorne, 452 F. Supp. 2d 64, 70 (D.D.C. 2006).  Clearly, both the defendants and the

intervenor-applicants agree that the FWS's decision that a listing of the Gunnison sage-grouse as

endangered or threatened is "not warranted" under the ESA should be upheld.  However, the

FWS's obligation is to represent the interests of the general public in protecting and conserving

species covered by the ESA, while the intervenor-applicants' interests are those of its members,

which include, but are not limited to, protecting their members' livelihoods and business

operations, along with advancing local and state conservation measures.  Thus, although the FWS

and the intervenor-applicants share a common interest – upholding the FWS's listing

determination – that shared interest does not guarantee adequate representation of the intervenor-

applicants' interests and those of their members.  As the Circuit Court has recognized, even "a

shared general agreement does not necessarily ensure agreement in all particular respects." Fund

for Animals, 322 F.3d at 737 (quoting Natural Res. Def. Council, 561 F.2d at 912) (internal

quotation marks omitted).  Considering the minimal showing that must be made to demonstrate

inadequate representation, the Court concludes that the intervenor-applicants have satisfied the

final requirement for intervention as of right under Federal Rule of Civil Procedure 24(a).[17]

### III. Conclusion

Based on the foregoing analysis, the intervenor-applicants' motion to intervene as

defendants pursuant to Federal Rule of Civil Procedure 24(a) is **GRANTED**.

---

[17] Although they oppose the motion to intervene, the plaintiffs request that if the Court should grant intervention to the intervenor-applicants that the Court limit the scope of the intervention in the following ways: (1) order the intervenors "not to assert claims outside the scope of the Complaint;" (2) prohibit the intervenors "from filing any motions independently, or in which the Secretary does not join;" (3) prohibit the intervenors "from seeking any discovery not sought by the Secretary;" (4) require the intervenors and the Secretary to each reduce by one-half the standard page limits authorized by the Local Rules for all Court filings; and (5) restrict "intervention to the remedial phase of this case." Pls' Opp'n at 20-22.  In the intervenor-applicants' reply, they opposed such restrictions as arbitrary and contrary to the purpose of intervention, considering the applicants' "commitment" to follow scheduling orders issued by the Court, and the applicants' and defendants' varied interests. Intervenor-Applicants' Reply at 14.  Further, the intervenor-applicants contend that they do not seek to alter dramatically the scope of the case as it exists in its current posture. Id.  As noted in Advisory Committee Notes to the Federal Rules of Civil Procedure, intervention of right "may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." Fed. R.Civ. P. 24 advisory committee's note; see Smuck, 408 F.2d at 180 (stating that after requirements for intervention are met, consideration of "the nature of [the intervenor-applicant's] 'interest' may play a role in determining the sort of intervention which should be allowed") (footnote omitted).  For reasons of judicial economy and the purpose for which intervention is being permitted, the Court agrees with the plaintiffs that intervention must be limited to claims within the scope of the Complaint. Otherwise, the Court declines to limit the applicants' intervention as requested by the plaintiffs.

**SO ORDERED**.[18]

_____

Reggie B. Walton
United States District Court

---

[18]An order consistent with this Court's Memorandum Opinion shall be filed contemporaneously herewith.