## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **COUNTY OF SAN MIGUEL,** | ) | Civ. No. 06-1946 (RBW) |
| **COLORADO,** | ) | |
| 333 West Colorado Avenue, 3rd Floor | ) | |
| Telluride, Colorado 81435, | ) | |
| | ) | |
| **SAGEBRUSH SEA CAMPAIGN,** | ) | |
| 2224 W. Palomino Drive | ) | |
| Chandler, Arizona 85224, | ) | |
| | ) | |
| **CENTER FOR NATIVE ECOSYSTEMS,** | ) | |
| 1536 Wynkoop, Suite 301 | ) | |
| Denver, Colorado 80202, | ) | |
| | ) | |
| **FOREST GUARDIANS,** | ) | **FIRST AMENDED COMPLAINT** |
| 312 Montezuma Avenue, Suite A | ) | **FOR DECLARATORY** |
| Santa Fe, New Mexico 87501, | ) | **AND INJUNCTIVE RELIEF** |
| | ) | **under the ESA and the APA** |
| **THE LARCH COMPANY,** | ) | |
| 1213 Iowa Street | ) | |
| Ashland, Oregon 97520, | ) | |
| | ) | |
| **SINAPU,** | ) | |
| 4990 Pearl East Circle, Suite 301 | ) | |
| Boulder, Colorado 80301, | ) | |
| | ) | |
| **CENTER FOR BIOLOGICAL** | ) | |
| **DIVERSITY,** | ) | |
| 917 SW Oak Street, Suite 413 | ) | |
| Portland, Oregon 97205, | ) | |
| | ) | |
| **PUBLIC EMPLOYEES FOR** | ) | |
| **ENVIRONMENTAL RESPONSIBILITY,** | ) | |
| 2000 P Street, NW, Suite 240 | ) | |
| Washington, DC 20036, | ) | |
| | ) | |
| **BLACK CANYON AUDUBON SOCIETY,** | ) | |
| 28478 Highway 92 | ) | |
| Hotchkiss, Colorado 81419, | ) | |
| | ) | |
| **SHEEP MOUNTAIN ALLIANCE,** | ) | |
| 218 B West Colorado Avenue, No. 17 | ) | |
| Telluride, Colorado 81435, | ) | |

and                                                    )
                                                       )
**NATIONAL AUDUBON SOCIETY,**                          )
700 Broadway                                           )
New York, NewYork 10003,                               )
                                                       )
Plaintiffs,                                            )
                                                       )
v.                                                     )
                                                       )
**DIRK A. KEMPTHORNE**, in his                         )
official capacity as Secretary of the                  )
Department of the Interior,                            )
US Department of the Interior                          )
Interior Building                                      )
1849 C Street, NW                                      )
Washington, DC 20240,                                  )
                                                       )
and                                                    )
                                                       )
**H. DALE HALL**, in his official capacity             )
as Director of the United States Fish and              )
Wildlife Service, an agency of the                     )
Department of the Interior,                             )
US Fish and Wildlife Service                           )
US Department of the Interior                          )
1849 C Street NW, Room 3012                            )
Washington, DC 20240,                                  )
                                                       )
Defendants.                                            )
_____ )

## STATEMENT OF THE CASE

1.      By this citizen suit under the Endangered Species Act, 16 U.S.C. § 1531, *et seq*.

("ESA" or "Act"), plaintiffs – a Colorado county and ten non-profit conservation, birding and

government accountability organizations committed to the conservation and recovery of

Gunnison sage-grouse – challenge defendants' April 18, 2006 determination that listing

Gunnison sage-grouse as "endangered" or "threatened" under the ESA is "not warranted."  74

Fed. Reg. 19954 (Apr. 18, 2006) ("Listing Determination").

FIRST AMENDED COMPLAINT                                          Page 1

2.      Plaintiffs bring this action pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g)(1)(C), and the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706, against defendants Dirk A. Kempthorne, in his official capacity as Secretary of the Department of the Interior ("Secretary"), and H. Dale Hall, in his official capacity as U.S. Fish and Wildlife Service ("FWS") Director, for violations of the ESA, §§ 1531 *et seq.*, and the APA, 5 U.S.C. §§ 701 *et seq.*

3.      Plaintiffs seek declaratory relief for defendants' violations of the ESA and APA as described in this Complaint.  Plaintiffs also seek an Order setting aside defendants' "not warranted" ESA Listing Determination for Gunnison sage-grouse, and an injunction remanding to the FWS to issue proposed and final listing and critical habitat determinations for Gunnison sage-grouse consistent with the requirements of the Act and this Court's direction.

4.      Pursuant to Local Rule 40.5, plaintiffs file this action as "related" to *American Lands Alliance, et al. v. Norton, et. al.*, Civ. No. 00-2339 (D.D.C.) (RBW), and *American Lands Alliance, et al. v. Norton, et al.*, Civ. No. 04-0434 (D.D.C.) (RBW), because this action involves common issues of fact and grows out of the same events and transactions as those prior actions.

5.      Should plaintiffs prevail on the merits, they will seek an award of costs and attorney fees pursuant to the ESA, 16 U.S.C. § 1540(g)(4), and/or the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to the citizen suit provisions of the ESA.  16 U.S.C. §§ 1540(g)(1), 1540(g)(2)(C).  The Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346, because this action involves the United States as a defendant and arises under the laws of the United States, including the ESA and the APA.  The requested relief

FIRST AMENDED COMPLAINT                                    Page 3

is proper under 16 U.S.C. § 1540(g)(1); 28 U.S.C. §§ 2201, 2202, 1361; and 5 U.S.C. §§ 704, 705, 706.

7.    In compliance with 16 U.S.C. § 1540(g)(2)(C), plaintiffs gave notice to defendants Kempthorne and Hall of plaintiffs' intent to file suit under the ESA for the violations described in this complaint.  The letters which comprise plaintiffs' notice are attached to this Complaint as Exhibits A and B.  The violations complained of in the notices are continuing and have not been remedied.

8.    Venue is proper in this Court pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e).  The principal offices of the Deputy Assistant Secretary, Secretary, FWS, FWS Director, and the Department of Interior are located in the District of Columbia.

## PARTIES

9.    Plaintiff San Miguel County is a statutory county pursuant to Title 30 of the Colorado Revised Statutes.  As home of the Telluride Ski Resort and other popular tourist destinations, San Miguel County expends hundreds of thousands of dollars every year for the protection of natural resource, aesthetic, and recreational values of the lands and wildlife within the County.  San Miguel County also relies heavily on the regional tourism industry, which encompasses the complete current range of Gunnison sage-grouse.  The plight of Gunnison sage-grouse has garnered significant regional and national attention, which has resulted in a general awareness that San Miguel County may, in the near future, provide one less reason for tourists to visit.  San Miguel County has, for the past several years, proactively addressed the plight of Gunnison sage-grouse through multiple means, including: (a) participating in the development and implementation of the Gunnison Sage-grouse Rangewide Conservation Plan; (b) exercising the county's authority to regulate land use to protect land from activities that would cause

FIRST AMENDED COMPLAINT                                                    Page 4

material danger to significant wildlife habitat and would endanger wildlife species, C.R.S. § 29-20-104(1)(b); (c) implementing regulations in Section 5-4 of the San Miguel County Land Use Code requiring compliance with the standards for Areas and Activities of Local and State Interest pursuant to C.R.S. § 24-65.1-101 *et seq.* for any development proposed within existing Gunnison sage-grouse habitat; and (d) implementing policies in Section 2-16 of the San Miguel County Land Use Code requiring protection, enhancement, and preservation of Gunnison sage-grouse populations and their habitats.  Accordingly, the not warranted decision will harm San Miguel County's tourism industry, which will directly decrease the county's tax revenues.  The decrease in tax revenues will result in an impaired ability to protect the attributes that draw tourists to the area as well as an impaired ability to provide for the health, safety, and welfare of the citizens of San Miguel County in an effective manner.  Additionally, the decision will significantly impair San Miguel County's ability to enforce state laws and county regulations relating to the protection of wildlife and wildlife habitat.

10.    Plaintiff Sagebrush Sea Campaign is a regional conservation organization that was initiated by American Lands Alliance, the lead plaintiff in the two prior, related lawsuits regarding Gunnison sage-grouse.  The Sagebrush Sea Campaign is now sponsored by Forest Guardians, another plaintiff in this lawsuit.  The Sagebrush Sea Campaign focuses public attention and conservation resources on protecting and restoring the vast sagebrush-steppe landscape in the American West.  The Sagebrush Sea Campaign participates in public planning processes, advocates for natural resource protection, and uses education, research, legislation, and litigation to conserve and restore sagebrush-steppe ecosystems and wildlife for present and future generations, including Gunnison sage-grouse, the subject of this lawsuit.  The Sagebrush Sea Campaign has recreational, scientific, educational, aesthetic, and other interests in protecting

FIRST AMENDED COMPLAINT                                                        Page 5

remaining sagebrush-steppe habitat and the species that depend on it, including Gunnison sage-grouse.

11.     Plaintiff Center for Native Ecosystems ("CNE") is dedicated to the recovery of native ecosystems in the Greater Southern Rocky Mountains, and to the restoration of the wild habitat in which all species flourish. CNE has approximately 160 members, with the majority residing in Colorado. CNE's members and staff use and enjoy the lands that provide habitat for Gunnison sage-grouse for recreational, scientific, educational, aesthetic, and other purposes. While using and enjoying these lands, CNE's members and staff enjoy viewing the sage-grouse. CNE and its staff and members have recreational, scientific, educational, aesthetic, and other interests in protecting Gunnison sage-grouse and its habitat.

12.     Plaintiff Forest Guardians is dedicated to the preservation and restoration of native wildlands and wildlife in the American Southwest through fundamental reform of public policies and practices. Forest Guardians has approximately 1,650 members, including members in Colorado. Forest Guardians' staff and members use and enjoy the lands that provide habitat for Gunnison sage-grouse for recreational, scientific, educational, aesthetic, and other purposes. While using and enjoying these lands, Forest Guardians' staff and members enjoy viewing Gunnison sage-grouse. Forest Guardians participates in public planning processes, including filing administrative challenges of oil and gas leasing and livestock grazing where those land uses adversely impact Gunnison sage-grouse, the subject of this lawsuit. Forest Guardians and its staff and members have recreational, scientific, educational, aesthetic, and other interests in protecting Gunnison sage-grouse and its habitat.

13.     Plaintiff The Larch Company ("TLC") is a for-profit, Oregon limited liability company whose mission is conservation in the public interest. TLC staff provide written

FIRST AMENDED COMPLAINT                                      Page 6

materials, speeches, and consultation to non-profit organizations on a variety of environmental

issues.  All profits of TLC are donated to non-profit conservation organizations.  TLC has

published a book, *Oregon Desert Wilderness: 70 Hikes*, which features greater sage-grouse in

Oregon.  TLC intends to publish other articles and books on sage-grouse, including the Gunnison

species.  The possible extinction of Gunnison sage-grouse is contrary to that goal.  TLC and its

staff have recreational, scientific, educational, aesthetic, and other interests in protecting the

biological diversity of desert ecosystems, including species such as Gunnison sage-grouse.

14.     Plaintiff Sinapu, named after the Ute word for wolves, is dedicated to the

recovery of native carnivores in the Southern Rocky Mountains, and to the restoration of the

wild habitat in which all species flourish.  Sinapu has approximately 1,000 members, with the

majority residing in Colorado.  Sinapu's members use and enjoy the lands that provide habitat

for Gunnison sage-grouse for recreational, scientific, educational, aesthetic, and other purposes.

While using and enjoying these lands, Sinapu's members enjoy viewing Gunnison sage-grouse.

Sinapu and its staff and members have recreational, scientific, educational, aesthetic, and other

interests in protecting Gunnison sage-grouse and its habitat.

15.     Plaintiff Center for Biological Diversity ("Center") is a non-profit conservation

organization that protects endangered species and wild places through science, policy, education,

and environmental law.  The Center has over 14,000 members, many of whom reside in the

Interior Mountain West and Colorado, where Gunnison sage-grouse is found.  The Center's staff

and members have ongoing interests in protecting the native birds of the Interior Mountain West,

including Gunnison sage-grouse, and use and enjoy the lands that provide habitat for this species

for recreation, observation, research, restoration projects, aesthetic enjoyment, and other

scientific and educational activities, and plan to continue to do so in the future.  While using and

FIRST AMENDED COMPLAINT                                        Page 7

enjoying these lands, the Center's members and staff enjoy viewing these species, and, thus, the Center and its staff and members have recreational, scientific, educational, aesthetic, and other interests in protecting Gunnison sage-grouse and its habitat.

16.    Plaintiff Public Employees for Environmental Responsibility ("PEER") is a national, non-profit organization that represents public employees who are working to protect, preserve, and restore native ecosystems in the western United States.  Thus, any local, state or federal actions, or inactions, that interfere with recovery of threatened or endangered species or their habitat undermines the work and employment of PEER members.  PEER has approximately 300-400 members who reside in the American West, including Colorado.  Plaintiff PEER brings this action on behalf of itself and its adversely affected members.  PEER's members are particularly concerned about the protection and recovery of Gunnison sage-grouse because of its importance to native western sagebrush ecosystems.  Members of PEER frequently use and enjoy the deserts and grasslands of the West, including the areas that comprise the historic and current range of Gunnison sage-grouse, for wildlife viewing and recreational, scientific, educational, aesthetic, and other activities, and will continue to do so in the future.  PEER and its members have a substantial interest in this matter and are adversely affected and aggrieved by defendants' failure to comply with the ESA and the APA.  The requested relief will redress PEER's and its members' injuries.

17.    Plaintiff Black Canyon Audubon Society ("Black Canyon Audubon") has almost 300 members and works on conservation issues in Ouray, Delta, Montrose, Gunnison, Hinsdale, and San Miguel counties in Colorado.  Black Canyon Audubon was the first conservation organization in the nation to support protection for Gunnison sage-grouse and has participated in multiple federal land management planning processes that affect the species.  The chapter also

FIRST AMENDED COMPLAINT                                    Page 8

helped to craft two local conservation plans for Gunnison sage-grouse. Members have remained active participants of the local working groups and have provided comments and feedback on the rangewide conservation plan for the sage-grouse. Black Canyon Audubon has been active in environmental education for the grouse for many years, including by sponsoring numerous talks and radio shows to educate the public about the species. Black Canyon Audubon and its members have recreational, scientific, educational, aesthetic, and other interests in protecting Gunnison sage-grouse and its habitat.

18.    Plaintiff Sheep Mountain Alliance is a grassroots citizens' organization dedicated to the preservation and protection of the natural environment and unique quality of life in the greater Telluride region in Colorado. Sheep Mountain Alliance participates in federal land management planning processes, advocates conservation of species and open space, and educates the public about oil and gas issues in the region. Sheep Mountain Alliance and its staff and members have recreational, scientific, educational, aesthetic, and other interests in protecting Gunnison sage-grouse and its habitat.

19.    Plaintiff National Audubon Society is a not-for-profit corporation organized under the laws of the State of New York, with its principal office at 700 Broadway, New York, New York 10003. Audubon has more than 367,000 members, offices in 23 states, and a presence in all 50 states through more than 450 certified chapters and through its nature centers, sanctuaries, and education and science programs. Locally, Audubon maintains a Colorado state office which works on behalf of Audubon's 9,000 members and activists in the state. Audubon's mission is to conserve and restore natural ecosystems, focusing on birds, other wildlife, and their habitats for the benefit of humanity and the earth's biological diversity. It carries out that mission through a variety of activities including education, habitat conservation and public

FIRST AMENDED COMPLAINT                                           Page 9

policy advocacy.  Audubon members engage in a variety of wildlife observation activities, including watching Gunnison sage-grouse and other avian species in Colorado and Utah.  In a March 2006 report, citing habitat loss and degradation from urban development, resource extraction, and agricultural activities, the National Audubon Society identified Gunnison sage-grouse as one of the nation's ten most endangered birds.  Audubon and its members are adversely affected by the determination not to list the Gunnison sage-grouse because the species will continue to decline and may become extinct if it is not listed.  Audubon and its staff and members have recreational, scientific, educational, aesthetic, and other interests in protecting Gunnison sage-grouse and its habitat.

20.    Plaintiffs' members and staff rely on FWS to comply fully with all provisions of the ESA, including the Section 4 listing and critical habitat designation requirements, which insure that species warranting protection as either threatened or endangered, as demonstrated by the best available scientific data, promptly receive such protected status.

21.    FWS's decision not to list Gunnison sage-grouse as endangered or threatened and designate critical habitat as appropriate under the Act furthers endangers the species and prevents recovery of Gunnison sage-grouse and its habitat by preventing the implementation of protective measures for the species and its habitat.  As a result, the recreational, scientific, educational, aesthetic, and other interests of plaintiffs have been, are being, and, unless the relief requested is granted, will continue to be adversely affected and injured by FWS's failure to comply with the ESA.  These are actual, concrete injuries caused by defendants' failure to comply with mandatory duties under the ESA and the APA.  Plaintiffs have no adequate remedy at law and the injuries would be redressed by the relief sought.

FIRST AMENDED COMPLAINT                                        Page 10

22.     Plaintiffs' members and staff spend time in areas adversely affected by FWS's violations of the ESA.  Plaintiffs' members and staff intend to continue to use and enjoy, on a frequent and ongoing basis, the habitat adversely affected by FWS's failure to list Gunnison sage-grouse and designate critical habitat as appropriate under the Act.

23.     Defendant Dirk A. Kempthorne is the Secretary of the Interior and is sued in his official capacity.  The Secretary of the Interior has the ultimate responsibility for implementing the ESA with respect to non-marine species, including the decision at issue in this case.  16 U.S.C. § 1532(15).

24.     Defendant H. Dale Hall is the Director of FWS, which is an agency of the Department of the Interior.  The Secretary has delegated day-to-day responsibility for implementing the ESA with respect to non-marine species to FWS.  50 C.F.R. § 402.01(b).  H. Dale Hall is sued in his official capacity.

## SUMMARY OF FACTS AND GENERAL ALLEGATIONS

### Gunnison Sage-grouse

25.     The sage-grouse is a brownish-gray bird known for its unique mating ritual and colorful yellow, white, and black features on male birds.

26.     In 1977, Dr. Clait Braun, who was then a Research Wildlife Scientist with the Colorado Division of Wildlife ("CDOW"), noticed that sage-grouse wings collected in the Gunnison Basin of southwestern Colorado were smaller than sage-grouse wings collected in northern Colorado.  Over the following two decades, Dr. Braun and others studied the morphological and genetic differences between sage-grouse populations.  Those differences were discovered to be significant, and in 2000 the American Ornithologists' Union formally determined that sage-grouse in southwestern Colorado – *i.e.*, Gunnison sage-grouse

FIRST AMENDED COMPLAINT                                          Page 11

(*Centrocercus minimus*) – comprise a distinct species from greater sage-grouse (*Centrocercus urophasianus*).

27.    In 1995, Dr. Braun determined that the historic range of Gunnison sage-grouse likely included southwestern Colorado, southwestern Kansas, northwestern Oklahoma, northern New Mexico, northeastern Arizona, and southeastern Utah.

28.    Gunnison sage-grouse rely on a variety of sagebrush habitats throughout the year. During the spring breeding season, males display on "leks" (*i.e.*, strutting grounds), which are open areas with good visibility and acoustics.  After breeding, females select nest sites in the vicinity of leks and in relatively tall and dense stands of sagebrush with residual grass and forbs that provide additional hiding cover.  As chicks mature through the summer, hens typically move their broods to wet meadow areas that retain succulent forbs and insects and contain tall grasses for hiding and foraging.  In fall, sage-grouse rely on upland areas that have at least 20 percent sagebrush cover and green forbs.  During winter, when snow cover is extensive and deep, sage-grouse forage in tall sagebrush in valleys and lower flat areas, and roost in shorter sagebrush along ridge tops.

29.    Because sage-grouse derive food, shelter, and cover from sagebrush and are dependent on sagebrush-steppe habitat for survival, sage-grouse are indicator species for the health of sagebrush-steppe ecosystems, including other species that rely on such ecosystems.

30.    The current range of Gunnison sage-grouse is about 8.5 percent of its historic range, according to FWS estimates of the species' historic and current ranges.

31.    There are six to eight "populations" of Gunnison sage-grouse remaining in Colorado and Utah, totaling between 3,000-6,000 birds.  At an estimated 4,700 birds, only the Gunnison Basin population contains more than 450 birds.  In 2004, CDOW estimated that the

FIRST AMENDED COMPLAINT                                          Page 12

rangewide Gunnison sage-grouse population declined between 42 and 90 percent over the last 50 years.

32.    Chief factors for the decline of Gunnison sage-grouse include habitat loss, fragmentation, and degradation from numerous human activities, including urban development, road and utility corridors, fences, energy development, conversion of native habitat to agriculture, domestic livestock grazing, fire suppression, off-road vehicles, and the alteration and degradation of riparian areas and wetlands.  These threats to Gunnison sage-grouse and its habitat are continuing.

33.    In March 2006, citing habitat loss and degradation from urban development, resource extraction, and agricultural activities, the National Audubon Society identified Gunnison sage-grouse as one of the nation's ten most endangered birds.

34.    Gunnison sage-grouse is further threatened by West Nile Virus ("WNV"), which been detected throughout the species' range.  Studies have documented WNV-related mortalities of greater sage-grouse, and show that sage-grouse succumb to the disease in high proportions.

## The Endangered Species Act

35.    Congress enacted the ESA in 1973 "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of [such species]."  16 U.S.C. § 1531(b).  The Supreme Court has expressly noted that the ESA is "the most comprehensive legislation for the preservation of endangered species enacted by any nation" and that the "plain intent of Congress in enacting th[e] statute was to halt and reverse the trend toward species extinction, whatever the cost."  *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 180, 184 (1978).

36.    The ESA protects species listed under the Act as "endangered" or "threatened" in

FIRST AMENDED COMPLAINT                                    Page 13

several ways.  The Act: (1) requires FWS to develop and implement a recovery plan for listed

species, 16 U.S.C. § 1533(f); (2) requires all federal agencies to carry out their programs for the

conserve listed species and to avoid jeopardy to the continued existence of listed species, 16

U.S.C. § 1536(a)(1), (a)(2); and (3) forbids anyone from "taking" listed species by any means,

except where authorized.  16 U.S.C. §§ 1538, 1539, 1532(19); 50 C.F.R. § 17.31.

37.     To receive the Act's protections, a species must first be "listed" as endangered or

threatened.  "Endangered species" are species "in danger of extinction throughout all or a

significant part of [their] range."  16 U.S.C. § 1532(6).  "Threatened species" are those species

that are likely to become endangered within the foreseeable future.  16 U.S.C. § 1532(20).

38.     Section 4 of the Act imposes a non-discretionary duty requiring FWS to list a

species as endangered or threatened if any one of five statutory factors are met:

(A)     the present or threatened destruction, modification, or curtailment of its
        habitat or range;
(B)     overutilization for commercial, recreational, scientific, or educational
        purposes;
(C)     disease or predation;
(D)     the inadequacy of existing regulatory mechanisms; and
(E)     other natural or manmade factors affecting its continued existence.

16 U.S.C. § 1533(a)(1).  In addition, the Act requires FWS to make listing decisions "solely on

the basis of the best scientific and commercial data available."  16 U.S.C. § 1533(b)(1)(A).

39.     The ESA provides two methods by which a species may be "listed" under the Act

and thereby afforded its protections.  First, a species may be listed internally – *i.e.*, at the

Secretary's own initiative.  16 U.S.C. § 1533(a).  Second, the public may submit a petition to the

Secretary to list a species.  16 U.S.C. § 1533(b)(3).  The petition must contain, *inter alia*,

detailed information and documentation regarding the status of the species and the threats to its

survival.  50 C.F.R. § 424.14.  This second method is informally called the "petition" process.

FIRST AMENDED COMPLAINT                                              Page 14

40.     When FWS receives a petition to list a species submitted by the public, within 90 days of receiving the petition, to the maximum extent practicable, FWS must determine whether the petition presents substantial scientific or commercial information indicating that a listing "may be warranted."  16 U.S.C. § 1533(b)(3)(A).  If FWS finds that listing is "not warranted," the petition process concludes, and such a finding is immediately subject to judicial review.  16 U.S.C. § 1533(b)(3)(C)(ii).

41.     If FWS finds that a petition submitted by the public presents substantial scientific or commercial information indicating that a listing "may be warranted," FWS must commence a 12-month review of the petition and other relevant information.  16 U.S.C. §§ 1533(b)(3)(A),(B). A "may be warranted" determination must be published in the *Federal Register*, and FWS must conduct a "status review" and solicit public comments for consideration in its final decision.  16 U.S.C. § 1533(b)(3)(A).

42.     At the close of the 12-month status review period, FWS must determine whether the petitioned action is: (i) "not warranted"; (ii) "warranted"; or (iii) "warranted but precluded" by higher listing priorities.  16 U.S.C. § 1533(b)(3)(B).

43.     If FWS determines at the 12-month stage that a listing is "not warranted," it must promptly publish that determination in the *Federal Register*, and that is the end of the process. 16 U.S.C. § 1533(b)(3)(B)(i).  FWS's "not warranted" 12-month finding is subject to judicial review.  16 U.S.C. § 1533(b)(3)(C)(ii).

44.     If FWS determines that a listing is "warranted," it must promptly publish a proposed rule in the *Federal Register*, 16 U.S.C. § 1533(b)(3)(B)(ii), and, within one year of publishing the proposed rule, publish a final rule listing the species or withdraw the proposed rule. 16 U.S.C. §§ 1533(b)(6)(A).  A final regulation designating "critical habitat" of an

FIRST AMENDED COMPLAINT                                         Page 15

endangered or threatened species must be published "concurrently with the final regulation implementing the determination that such species is endangered or threatened[.]"  *Id*. at § 1533(b)(6)(C).  The ESA defines "critical habitat" as habitat that is "essential to the conservation of the species," §§ 1532(5)(A)(i), (A)(ii), with "conservation" in turn defined as the use of methods necessary to bring listed species "to the point at which the measures provided pursuant to this chapter are no longer necessary."  *Id*. at § 1532(3).

45.      If FWS determines that listing a particular species is "warranted but precluded," the Secretary must publish a finding in the Federal Register that demonstrates that: (1) listing is "precluded by pending proposals to determine whether any species is an endangered species or a threatened species"; and (2) "expeditious progress is being made to add qualified species to either of the lists." 16 U.S.C. § 1533(b)(3)(B)(iii).  Species that are designated as "warranted but precluded" are placed on the FWS's "candidate" list.  *See* 64 Fed. Reg. 57534, 57536 (Oct. 25, 1999).  Candidate species receive none of the substantive protections that are afforded to listed species under the ESA.  50 C.F.R. § 424.15(b).

### Litigation Concerning Petition to List Gunnison Sage-grouse Under ESA, And FWS's Prior Position That Gunnison Sage-grouse Warrants ESA Listing

46.      On January 25, 2000, plaintiffs submitted a petition to the Secretary to list Gunnison sage-grouse as endangered under the ESA.  Webb, *et al.*, Status Review and Petition to List the Gunnison Sage-grouse (*Centrocercus minimus*) (Jan. 25, 2000) ("Petition").  The Petition described significant declines in Gunnison sage-grouse population and range due to numerous threats.  The Secretary assigned the Petition to FWS's Mountain-Prairie Regional office in Colorado.

FIRST AMENDED COMPLAINT                                                      Page 16

47.    On February 24, 2000, Ralph O. Morgenweck, Regional Director of the FWS Mountain-Prairie Region, responded in writing and informed petitioners that, on January 19, 2000 – or, within a week before the agency received the Petition – FWS internally designated Gunnison sage-grouse as a candidate species by relying on provisions in the agency's "Petition Management Guidance" ("PMG") Policy, which was later enjoined on a nationwide basis by this Court.  FWS later contended in litigation before this Court that its designation of Gunnison sage-grouse as a candidate species served as the "functional equivalent" of a "warranted but precluded" finding under Section 4(b)(3)(B) of the ESA.  Thus, relying on the PMG and its internal candidate designation for Gunnison sage-grouse, FWS did not publish a 90-day finding in the *Federal Register* or otherwise respond to the Petition.

48.    In March 2000, FWS issued the first of several "Candidate and Listing Priority Assignment" forms for Gunnison sage-grouse, in which the agency recognized that Gunnison sage-grouse is threatened by ongoing habitat loss, fragmentation, and degradation caused by numerous human activities, and that existing regulatory mechanisms are inadequate to protect against habitat loss.  FWS concluded that listing Gunnison sage-grouse under the ESA was "warranted," and assigned the species a "Listing Priority Number" ("LPN") of "5," which meant that threats to the grouse are of a "high" magnitude, but that listing was "non-imminent."

49.    On November 19, 2000, the petitioners filed a Complaint in U.S. District Court for the District of Columbia that challenged FWS's failure to issue a 90-day finding on the Petition as required by Section 4(b)(3)(A) of the ESA.  *See American Lands Alliance, et al. v. Norton, et al.*, Civ. No. 00-2339 (RBW) ("*ALA v. Norton I*").

50.    Approximately six weeks after petitioners filed their Complaint, FWS published in the *Federal Register* a "Notice of Candidate Designation," in which FWS again acknowledged

that Gunnison sage-grouse is threatened with extinction due to habitat loss, fragmentation, and degradation due to numerous human activities, that existing conservation efforts are inadequate to reverse the habitat loss or its effects, and that the species warrants listing under the ESA. *Notice of Designation of the Gunnison Sage Grouse as a Candidate Species*, 65 Fed. Reg. 82310, 82311 (Dec. 28, 2000).

51.     In June 2002, FWS published a "Candidate Notice of Review" ("CNOR"), which is a list of all ESA candidate species. 67 Fed. Reg. 40657 (June 13, 2002). The CNOR included information on Gunnison sage-grouse. *Id*. at 40666-67. In the CNOR, FWS again acknowledged that the species' current range has been significantly reduced from its historic range by direct habitat loss, fragmentation, and degradation from numerous ongoing threats, that these threats are of "high magnitude," and that the species warrants listing under the ESA. *Id*. FWS maintained a LPN of "5" for Gunnison sage-grouse. *Id*. at 40667.

52.     In connection with the 2002 CNOR, FWS prepared a Candidate and Listing Priority Assignment Form, which included additional information regarding the status of Gunnison sage-grouse. In that document, FWS acknowledged that state and federal regulatory agencies do not have sufficient authority to protect against habitat loss, particularly on private lands. FWS also recognized that voluntary conservation efforts may be ineffective and are dependent on uncertain funding. FWS further acknowledged that the threats to the species are "still occurring" or "have the potential to occur."

53.     In *ALA v. Norton I*, on January 30, 2003, the District Court for the District of Columbia held that FWS's failure to make 90-day and 12-month findings on the Gunnison sage-grouse Petition, by relying on the PMG Policy, violated Section 4(b)(3) of the ESA. *American*

FIRST AMENDED COMPLAINT                                      Page 18

*Lands Alliance, et al. v. Norton, et al.*, 242 F. Supp. 2d 1, 11 (D.D.C. 2003).  The Court ordered FWS to issue a 12-month finding on the Petition.  *Id*.

54.     In February 2003, FWS prepared an updated Candidate and Listing Priority Assignment Form, in which FWS acknowledged that since the 1950s and 1960s there has been a "true" and "certain" decline in the species in the Gunnison Basin, where the largest population occurs.  In addition, FWS reiterated that state and federal agencies lack the necessary authority to protect against ongoing habitat loss, particularly on private lands, and that voluntary conservation efforts may be ineffective and uncertain.  FWS concluded that despite conservation efforts, Gunnison sage-grouse is threatened with extinction and warrants listing under the ESA.

55.     In *ALA v. Norton I*, on March 17, 2003, defendants asked the Court to reconsider its January 30, 2003 ruling.  On May 13, 2003, the Court vacated its Order in part, and stated that plaintiffs must challenge FWS's 12-month warranted but precluded finding in a separate action.

56.     On March 17, 2004, plaintiffs filed a Complaint before the D.C. District Court, and challenged defendants' warranted but precluded finding for Gunnison sage-grouse as contrary to the ESA and APA.  *American Lands Alliance, et al. v. Norton, et al.*, Civ. No. 04-0434 (D.D.C.) (RBW) ("*ALA v. Norton II*").  The Complaint was filed as "related" to *ALA v. Norton I* pursuant to Local Rule 40.5.

57.     On May 4, 2004, FWS published an updated CNOR.  69 Fed. Reg. 24876 (May 4, 2004).  FWS reiterated that the Gunnison sage-grouse range has been reduced to less than 25 percent of its historic range due to habitat loss, fragmentation, and degradation from numerous human activities.  *Id*. at 24881.  FWS also stated that threats to Gunnison sage-grouse have increased due to drought-related effects to the habitat and effects to chick survival and recruitment, and relaxation of restrictions on land use in Gunnison County, which harbors the

only large population of the species. *Id*. In light of the increased threat to Gunnison sage-grouse, FWS elevated the grouse's LPN from a "5" to a "2." *Id*. A listing priority of "2" means that threats to the species are of a "high" magnitude, and that listing is "imminent." 48 Fed. Reg. 43098, 43102 (Sept. 21, 1983).

58.    In the 2004 CNOR, FWS acknowledged that the Gunnison Basin population of Gunnison sage-grouse is "the only large population of the bird." 69 Fed. Reg. at 24881. At the same time, FWS recognized that the Gunnison Basin population is being subjected to "ongoing high magnitude threats." *Id*.

59.    In *ALA v. Norton II*, plaintiffs amended their Complaint on May 28, 2004. A few weeks later, in *ALA v. Norton I*, the Court enjoined the agency's implementation and reliance on the PMG Policy on a permanent, nationwide basis. *ALA v. Norton I*, Order (June 2, 2004) at 6-7.

60.    On May 11, 2005, FWS published an updated CNOR. 70 Fed. Reg. 24870 (May 11, 2005). FWS reiterated that the species' range has been reduced to less than 25 percent of its historic range due to habitat loss, fragmentation, and degradation from numerous human activities. *Id*. at 24893. FWS stated that "[g]iven ongoing and potential individual and cumulative threats, we are leaving the listing priority at a 2 at this time." *Id*.

61.    In the 2005 CNOR, FWS stated that it was at that time funding a proposed listing determination for Gunnison sage-grouse, which the agency characterized as a "high priority listing action." *Id*. at 24888.

62.    Between May 2005 and December 2005, FWS biologists and other personnel in Colorado, with the assistance of other regional and FWS field staff, prepared several drafts of a proposed rule to list Gunnison sage-grouse as "endangered" under the ESA. As required by the ESA, FWS also drafted and mapped proposed "critical habitat" designations concurrently with

FIRST AMENDED COMPLAINT                                             Page 20

the proposed listing rule.  In drafting these proposed rules, FWS acknowledged that threats to Gunnison sage-grouse are high for virtually all populations, and that these threats endanger Gunnison sage-grouse throughout all and a significant portion of its range.

63.    In *ALA v. Norton II*, on November 14, 2005, the parties filed a stipulated settlement agreement with the Court that required defendants to publish a listing determination for Gunnison sage-grouse on or before March 31, 2006.  The agreement further specified that if FWS determined that listing was warranted, the agency would also submit for publication a proposed rule on the same date, and publish a final listing determination on or before March 31, 2007.

64.    In December 2005, after several drafts of a proposed rule had been prepared, and following a directive from former Deputy Assistant Secretary of the Interior Julie MacDonald and other DOI officials in Washington, D.C., FWS drastically reversed course and began to draft a "not warranted" listing determination for Gunnison sage-grouse under the ESA.  FWS staff then produced several drafts of the "not warranted" listing determination between January 2006 and April 2006.

65.    On April 18, 2006 – two and a half weeks past the deadline for issuing a listing determination as provided in the parties' settlement agreement – defendants published the "not warranted" listing determination that is at issue in this action.

## The "Not Warranted" Listing Determination

66.    In the Listing Determination, FWS did not determine, define, describe, or otherwise ascertain what "endangered" status for Gunnison sage-grouse means, or evaluate and discuss in the finding whether the species is likely to decline to that level in the foreseeable future.  *See generally* 74 Fed. Reg. 19954 (Apr. 18, 2006).

FIRST AMENDED COMPLAINT                                              Page 21

67.    In the Listing Determination, FWS acknowledged that the range of Gunnison sage-grouse has declined substantially from its historic extent, and that the species' habitat is expected to continue to decline in the foreseeable future.  *Id*. at 19957.

68.    In the Listing Determination, FWS estimated that Gunnison sage-grouse's historic range totaled approximately 21,376 square miles, and that its current range is approximately 1,822 square miles.  *Id*.  Based on these estimates, the current range of the species is approximately 8.5 percent of its historic range.  However, in the Listing Determination, FWS estimated that the Gunnison sage-grouse's current range is approximately 25 percent of its historic range.  *Id*.

69.    In the Listing Determination, FWS concluded that "most of the habitat loss, and by inference population decline, occurred prior to 1958," and that the species' total population has remained stable since 1957.  *Id*. at 19961.  Based on these assumptions, FWS concluded that the population is likely to remain stable in the future.  *Id*.  In reaching these assumptions and conclusions, FWS relied almost exclusively on a 2005 report by E.O. Garton.  *See generally id.*

70.    Of six peer reviewers who assessed the Garton report, five reviewers – including two biometricians uniquely qualified to assess its findings – alerted FWS to important flaws in its analysis.  Four of the reviewers found that large parts of the analysis were weak or supported by unsound data, and a fifth reviewer determined that it was based on the "major assumption" that "factors that have driven variability in rates of change in the past will remain the same in the future."  Despite these concerns, FWS concluded that the Garton report "constitutes the best currently available information."

FIRST AMENDED COMPLAINT                                          Page 22

**CLAIM FOR RELIEF**
**ESA – FAILURE TO MAKE LISTING DETERMINATION ON THE BASIS OF THE BEST SCIENTIFIC DATA AVAILABLE**

71.     Plaintiffs incorporate herein by reference paragraphs 1-70.

72.     When making listing determinations under the ESA, FWS must rely solely on the best scientific and commercial data available. 16 U.S.C. § 1533(b)(1)(A).

73.     In the negative Listing Determination, FWS failed to rely on the best scientific and commercial data available by, *inter alia*:

        a.     discounting information and its own prior conclusions that ongoing threats to Gunnison sage-grouse endanger the species throughout all and a significant portion of its range;

        b.     relying on a flawed population trend analysis;

        c.     misrepresenting the historic and current range of the species;

        d.     failing to explain its conclusion that three Gunnison sage-grouse groups or populations do not comprise a significant portion of the species' range;

        e.     concluding that three Gunnison sage-grouse groups and/or populations do not comprise a significant portion of the species' range; and

        f.     concluding, without substantiation, that the species is not endangered or threatened throughout a significant portion of its range.

74.     FWS failed to rely on the best scientific and commercial data available, and violated the ESA's requirements for a 12-month listing determination.  16 U.S.C. § 1533(b)(3). Consequently, FWS's Gunnison sage-grouse Listing Determination was and is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the ESA within the meaning of the APA.  5 U.S.C. § 706(2); 16 U.S.C. § 1533(b)(1)(A).

FIRST AMENDED COMPLAINT                                              Page 23

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A.     Declare that FWS's "not warranted" finding on the Petition to list Gunnison sage-grouse as threatened or endangered violates Section 4(b)(3)(A) of the ESA.

B.     Declare that FWS's "not warranted" finding on the Petition to list Gunnison sage-grouse as threatened or endangered under the ESA is arbitrary, capricious, an abuse of discretion, not in accordance with law, without observance of procedure required by law, and/or constitutes agency action unlawfully withheld under section 706 of the APA.

C.     Issue an Order setting aside FWS' "not warranted" finding for Gunnison sage-grouse.

D.     Remand to FWS to issue new proposed and final listing and critical habitat determinations for Gunnison sage-grouse consistent with the requirements of the ESA and with this Court's order.

E.     Based on evidence and arguments to be presented in this challenge, order FWS to issue an emergency rule, pursuant to Section 4(b)(7) of the ESA, immediately listing Gunnison sage-grouse as "endangered" under the ESA, pending the agency's completion of normal listing procedures and rulemaking.

F.     Award plaintiffs their reasonable fees, costs, and expenses, including attorneys fees, associated with this litigation pursuant to the ESA, 16 U.S.C. § 1540(g)(4), and EAJA, 28 U.S.C. § 2412(d)(1)(A).

G.     Grant such additional and further relief as plaintiffs may request or this Court may deem just and appropriate.

FIRST AMENDED COMPLAINT                                          Page 24

DATED:        October 25, 2007              Respectfully submitted,


                                            ___/s/_____
                                            Amy R. Atwood
                                            D.C. Bar No. 470258
                                            Center for Biological Diversity
                                            PO Box 11374
                                            Portland, OR 97211
                                            503-283-5474 phone
                                            503-283-5528 fax
                                            atwood@biologicaldiversity.org

                                            Geoff Hickcox
                                            admitted *pro hac vice*
                                            Western Environmental Law Center
                                            679 East Second Ave, Suite 11B
                                            Durango, CO 81301
                                            970-382-5902
                                            970-385-6804 (fax)
                                            ghickcox@gmail.com

                                            Rebekah S. King
                                            admitted *pro hac vice*
                                            Assistant San Miguel County Attorney
                                            P.O. Box 791
                                            333 W. Colorado Ave., Third Floor
                                            Telluride, CO 81435
                                            970-728-3879
                                            970-728-3718 (fax)
                                            beckyk@sanmiguelcounty.org

                                            Attorneys for Plaintiffs


FIRST AMENDED COMPLAINT                                        Page 25