**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

COUNTY OF SAN MIGUEL,                    )
COLORADO, <u>et al.</u>,                 )
                                         )
                    Plaintiffs,          )
                                         )
        v.                               )        Civil Action No. 06-1946 (RBW)
                                         )
                                         )
DIRK A. KEMPTHORNE, <u>et al.</u>,       )
                                         )
                    Defendants,          )
_____)

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on the plaintiffs' combined motion seeking:

(1) to supplement the administrative record ("the Record"); (2) to compel the defendants

– the U.S. Fish and Wildlife Service ("Service"), an agency of the United States

Department of the Interior ("DOI" or "Interior") – to properly designate and certify the

Record; (3) to have the Court conduct an <u>in camera</u> review of several documents

excluded from the Record by the defendants on the grounds that they were improperly

designated as being protected from disclosure by the attorney-client privileged; and (4) to

have the Court take judicial notice of a government report which concerns allegations of

improper influence in the Service's designation process.  The defendants and defendant-

intervenors[1] oppose the motion.  For the reasons explained herein, the plaintiffs' motion

is granted in part and denied in part.

_____

[1]     On August 21, 2007, the Court granted the intervention motion of the Colorado Cattlemen's
Association, the Partnership for the West, and the Western Conservation Coalition (collectively the
"defendant-intervenors").

# I.  BACKGROUND

The Gunnison sage-grouse is a brownish-gray bird that lives in the sagebrush and wet meadows of the central western and southwestern United States, including the State of Colorado.  First Amended Complaint for Declaratory and Injunctive Relief ("Am. Compl.") ¶ 25-26.  Its distinctive features include its mating ritual and the colorful yellow, white, and black features on male birds.  Id.  The Colorado Division of Wildlife estimates that over the last 50 years, the species has declined in population between 42 and 90 percent, caused by, among other factors, "habitat loss, fragmentation, and degradation from numerous human activities."  Id. ¶¶ 31-32.  The bird now populates only about 8.5 percent of its historic range, according to the Service's estimates.  Id. ¶¶ 26-27 & 30.  Based upon this decline in population and occupational range, several Colorado county and non-profit conservation, birding, and government accountability organizations, the plaintiffs in this case, want the Service to list the Gunison sage-grouse as an endangered species under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-44 (2000).[2]  Am. Compl. ¶¶ 1, 21 & 46.

---

[2]     This lawsuit is the third in a series of citizen lawsuits challenging the Service's decision not to list the Gunnison sage-grouse as endangered under the ESA.  In the first lawsuit, the Larch Company, also one of the plaintiffs in this action, along with others, challenged the Service's reliance on its internal Petition Management Guidance ("PMG") policy to treat as redundant a public petition for designation of a fish, wildlife, or plant species when the species has already been placed on a candidate list pursuant to an internal Service process.  See Am. Lands Alliance v. Norton ("Am. Lands Alliance I"), 242 F. Supp. 2d 1, 18-19 (D.D.C. 2003), vacated in part, 360 F. Supp. 2d 1 (D.D.C. 2003).  In that case, the Court held that the defendants violated the ESA by failing to make the mandatory findings as required by 16 U.S.C. § 1533(b)(3); that the Service's PMG policy was procedurally flawed because it violated the "notice and comment' requirement embodied in 16 U.S.C. § 1533(h); and that the Service's PMG policy was facially invalid because it allowed the defendants to avoid their mandatory, non-discretionary obligations mandated by § 1533(b)(3)(B).  Am. Lands Alliance I, 242 F. Supp. 2d at 18-19.

In the second lawsuit, some of the plaintiffs in this action – the Center for Native Ecosystem, the Larch Company, and Sinapu – along with others, challenged the Service's designation of the Gunnison sage-grouse as "warranted but precluded" as an endangered specifies under the ESA.  See Am. Lands Alliance v. Norton ("Am. Lands Alliance II"), 525 F. Supp. 2d 135, 141 (D.D.C. 2007).  The parties' settlement in this second action "provid[ed] that the [Service] would 'submit for publication in the Federal Register a proposed listing determination as to the prudence of listing the Gunnison sage grouse [as either

(continued . . .)

The ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." Tennessee Valley Auth. v. Hill, 437 U.S. 153, 180 (1978). Congress designed the ESA to "save from extinction species that the Secretary of the Interior designates as endangered or threatened." Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S. 687, 690 (1995). With an exception for insects, the ESA defines an "endangered" species as "any species which is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6) (2000). The ESA defines a "threatened" species as "any specifies which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20) (2000).

In order to identify endangered or threatened fish, wildlife, or plant species, upon a public petition for designation or upon its own initiative, 16 U.S.C. § 1533(b)(3) (2000), the ESA directs the Secretary of Interior[3] to determine whether a candidate species should be designated as endangered or threatened upon the existence of any of the following factors:

> (A) the present or threatened destruction, modification, or curtailment of its habitat or range;
> (B) overutilization for commercial, recreational, scientific, or educational purposes;
> (C) disease or predation;
> (D) the inadequacy of existing regulatory mechanisms; or
> (E) other natural or manmade factors affecting its continued existence.

---

threatened or endangered] pursuant to Section 4(b)(6)(A) of the ESA, on or by March 31, 2006,' and 'a final listing determination on or by March 31, 2007.'" Id. at 141. The Service issued its final listing determination on April 18, 2006. See 71 Fed. Reg. 19954. The case now before the Court results from plaintiffs challenge to the Service's final listing determination.

[3]     The Secretary has designated the responsibilities under the ESA to the Service. 50 C.F.R. § 402.01(b). Therefore, when the Court refers in this opinion to the obligations of the Service under the ESA, it is actually referring to the obligations of the Secretary.

16 U.S.C. § 1533(a)(1) (2000).  The ESA directs the Secretary to make this designation

> solely on the basis of the best scientific and commercial
> data available to him after conducting a review of the status
> of the species and after taking into account those efforts, if
> any, being made by any State or foreign nation, or any
> political subdivision of a State or foreign nation, to protect
> such species, whether by predator control, protection of
> habitat and food supply, or other conservation practices,
> within any area under its jurisdiction, or on the high seas.

16 U.S.C. § 1533(b)(1)(A).  Concurrently with the Secretary's designation of a species as

endangered or threatened, the Secretary must also "designate any habitat of such species

which is then considered to be critical habitat."  16 U.S.C. § 1533(a)(3)(A).

On January 25, 2000, the plaintiffs submitted a petition to the Secretary which

described significant declines in the Gunnison safe-grouse's population and range, and

requested that the Secretary list the species as an endangered under the ESA.  Am. Lands

Alliance I, 242 F. Supp. 2d at 3.  The Secretary assigned the petition to the Service's

Mountain-Prairie Regional office in Colorado.  Id.  Shortly thereafter, the Larch

Company, one of the plaintiffs in this case, and others, brought suit when the Service did

not publish a 90-day finding in the Federal Register pursuant to 16 U.S.C. §

1533(b)(5)(A), or otherwise respond to the plaintiffs' petition because the Service had

already listed the species as a candidate for endangered classification pursuant to its

internal nomination process under its PMG policy.  Id. at 4.

On December 28, 2000, the Service published a "Notice of Candidate

Designation" in the Federal Register stating that listing the Gunnison sage-grouse as

endangered was warranted under the ESA.  See Notice of Designation of the Gunnison

Sage Grouse as a Candidate Species, 65 Fed. Reg. 82310, 82311 (Dec. 28, 2000).  In that

notice, the Service stated that it "request[ed] additional status information that may be available for the Gunnison sage grouse," which it would accept "at any time." Id. On June 13, 2002, May 4, 2004, and May 11, 2005, the Service published Notice of Reviews listing several candidate species, including the Gunnison sage-grouse. See 67 Fed. Reg. 40657, 40666-67 (June 13, 2002); 69 Fed. Reg. 24876, 24881 (May 4, 2004); 70 Fed. Reg. 24870, 24893 (May 11, 2003). In each of those publications, the Service reiterated that it was seeking "additional status information that may be available for the 286 candidate species," and that it would "consider this information in preparing listing documents and future revisions to the notice of review, as it [would] help [the Service] in monitoring changes in the status of candidate species and in management for conserving them." 67 Fed. Reg. at 40657; 69 Fed. Reg. at 24876; 70 Fed. Reg. at 24870.

Although throughout the period when the above referenced notices were published, the plaintiffs allege that the Service experts prepared several internal drafts of a proposed rule listing the Gunnison sage-grouse as endangered, as well as concurrently mapping a proposed "critical habitat" for the species, the Service reversed course sometime before issuing its final determination and produced several revised drafts of a "not warranted" determination. Am. Compl. ¶¶ 47-64. On April 18, 2006, the Service issued its final determination concluding that listing the Gunnison sage-grouse under the ESA was "not warranted." 71 Fed. Reg. 19954 (Apr. 18, 2006). The non-listing decision referenced "information obtained since [the Service's] 2004 review (e.g., [the] Garton [Report] 2005)," which supported the conclusion that "threats to the Gunnison sage-grouse are neither imminent or of such magnitude that they threaten or endanger the existence of the species." Id. at 19982. The plaintiffs challenge the conclusions of the

Garton report as "weak or supported by unsound data" and allege that "important flaws"
in its analysis cast doubts upon its findings and the Service's reliance upon the report as
the "best currently available information."  Am. Compl. ¶ 70 (internal quotations
omitted).

In their current motion, the plaintiffs seek to supplement the Record filed in this
case by the Service on April 16, 2007, on the grounds that it is incomplete and omissions
from the record based on the Service's claims of attorney-client privilege are
unwarranted.  Plaintiffs' Combined Motion for Supplementation of the Administrative
Record, Adequate Certification of the Record, Challenging Defendants' Claims of
Attorney-Client Privilege and For <u>In Camera</u> Review of Defendants' Privilege Claims,
and For Judicial Notice of an Inspector General Report on Julie MacDonald ("Pls.'
Mot.") at 1-2.  The plaintiffs also challenge the defendants' certification of the Record as
inadequate and request that the Court order the Service to file a new certification that
specifies the manner and guidelines by which the Record was compiled, and which
details which types of documents were included or omitted.  Memorandum in Support of
Plaintiffs' Combined Motion for Supplementation of the Administrative Record,
Adequate Certification of the Record, Challenging Defendants' Claims of Attorney-
Client Privilege and For <u>In Camera</u> Review of Defendants' Privilege Claims, and For
Judicial Notice of an Inspector General Report on Julie MacDonald ("Pls.' Mem.") at 2.
Finally, the plaintiffs request that the Court take judicial notice of a March 29, 2007
investigative report issued by Interior's Inspector General which concerns allegations of
improper influence in the designation process against Julie MacDonald, former Deputy

Assistant Secretary for the Service, who, the plaintiffs allege, was involved in the designation process of the Gunnison sage-grouse. Id. at 2 & 17 n.8.

The defendants oppose the motion on the grounds that the law presumes that the Service properly compiled, designated, and certified the Record, and the plaintiffs have failed to defeat that presumption. Defendants' Opposition to Plaintiffs' Combined Motion ("Defs.' Opp'n") at 2-3. As to the adequacy of their attorney-client designations, the defendants acknowledge that their privilege log is "deficient," but they assert that a revised privilege log will show that the Service properly designated and excluded certain records as non-disclosable under the attorney-client privilege.[4] Id. at 3. Finally, the defendants assert that the Inspector General's report is not a document about which the Court can take judicial notice. Id.

The defendant-intervenors also oppose the motion arguing that the plaintiffs have not shown that when the Service's designated the Gunnison sage-grouse as "not warranted," the documents which the plaintiff seek to become part of the Record were either relevant, before the Service decision-makers, or considered by them. Defendant-Intervenors Memorandum in Response to Plaintiffs' Combined Motion ("Def.-Intervenors' Opp'n Mem.") at 4-7. The defendant-intervenors also oppose the motion on the grounds that the Service properly designated and certified the Record, an accounting is unwarranted, and the documents designated attorney-client privilege were properly

---

[4]     In its opposition filing, the defendants state that they "acknowledge that the privilege log is deficient and will file a revised privilege log promptly." Defs.' Opp'n at 3. In their reply, the plaintiffs indicate that the defendants have failed to produce an updated log and additionally move that the Court order defendants to produce an adequate privilege log. Pls.' Reply at 2 & 18. Based on the defendants' concessions as to the deficiency of its log, the Court shall order the defendants to produce a more detailed privilege log or otherwise show proof that they have already produced such a log within ten days of the filing of this Memorandum Opinion and the accompanying Order.

excluded from the Record.[5]  Id. at 9-11.  Finally, the defendant-intervenors oppose the

motion on the grounds that it is improper for the Court to take judicial notice of the

Inspector General's report.  Id. at 13.

## II.  STANDARD OF REVIEW

This action is brought under the ESA's citizen-suit provision, 16 U.S.C. § 1540(g)

(2000), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2000).  "It is

well settled that an agency is legally bound to respect its own regulations, and commits

procedural error if it fails to abide them."  Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir.

1989).  The Service's actions, therefore, must comport with the APA, i.e. the Service

must have made its designation decision regarding the Gunnison sage-grouse in a manner

that was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law" or "without observance of procedure required by law."  5 U.S.C. § 706(2)(A),

(D).

"In reviewing the action of the [Service], the Court must be thorough and probing,

but if the Court finds support for the agency action, it must step back and refrain from

assessing the wisdom of the decision unless there has been 'a clear error of judgment.'"

The Fund for Animals v. The Nat'l Audubon Soc'y, 903 F. Supp. 96, 105 (D.D.C. 1995)

(quoting Marsh v. Ore. Natural Res. Council, 490 U.S. 360, 378 (1989)).  As part of its

factual inquiry into the agency action, "the reviewing court 'must consider whether the

decision was based on a consideration of the relevant factors and whether there has been

---

[5]      The defendant-intervenors also defend the defendants' privilege log as "neither vague or cryptic."
Def..-Intervenors' Opp'n Mem. at 11.  Based on the defendants' admission that its privilege log is
"deficient," Defs.' Opp'n at 3, and their indication that they will provide a more complete privilege log, the
Court will postpone its review of the adequacy of the defendants' assertions of privilege, and whether in
camera review is necessary, until it can review the updated log.

a clear error of judgment.'" Marsh, 490 U.S. at 378 (quoting Citizens to Preserve Overton

Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)).  Overall, a reviewing court should

"recognize the agency's expertise and experience with respect to questions involving

scientific or technical matters or policy decisions based on uncertain technical

information."  The Fund for Animals, 903 F. Supp. at 105 (citing Marsh, 490 U.S. at 375-

78; New York v. Reilly, 969 F.2d 1147, 1150-51 (D.C. Cir. 1992)).

## III.  ANALYSIS

### A.       The Administrative Record

As a general rule, the Court's review of the Service's action should be limited to

the information that was before the Service when it evaluated and determined whether to

list the Gunnison sage-grouse as endangered under the ESA.  Camp v. Pitts, 411 U.S.

138, 142 (1973); IMS, P.C. v. Alvarez, 129 F.3d 618, 623 (D.C. Cir. 1997) (stating that

the court "should have before it neither more nor less information than did the agency

when it made its decision" in order to ensure that the agency made a fair designation

based on the information available).  The "whole record" "include[s] all materials that

'might have influenced the agency's decision,' and not merely those on which the agency

relied in its final decision."  Amfac Resorts v. U.S. Dep't of the Interior, 143 F. Supp. 2d

7, 12 (D.D.C. 2001).  The whole record should include "the work and recommendations

of subordinates," but need not include privileged documents such as "deliberative intra-

agency memoranda."  Id.; see also, e.g., Pub. Citizen v. Heckler, 653 F. Supp. 1229, 1238

(D.D.C. 1986) (stating that where there is no other basis for its exclusion, the agency's

draft of a proposed regulation should become part of the administrative record as it is not

a deliberative document, it was kept in the agency's file, and it reflects information

compiled by the agency's own experts).  The policy requiring a reviewing court to

consider the entire record before the agency prior to rendering its decision ensures that

neither party is withholding evidence unfavorable to its position and that the agencies are

not taking advantage of post hoc rationalizations for administrative decisions.  Walter O.

Boswell Mem'l Hosp. v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1984).

      1.      Supplementation of the Administrative Record

The plaintiffs seek to supplement the current Record with thirty additional

documents the defendants have refused to include as part of the Record on the grounds

that the documents are relevant to whether the Gunnison sage-grouse should be listed

under the ESA, were known to and considered by the Service at the time it made its

decision, and were adverse to the Service's ultimate decision not to list the species.[6]  Pls.'

Mem. at 11, 16.  The defendants object on the grounds that the Record submitted by the

Service enjoys a presumption of accuracy and completeness, and the plaintiffs have not

carried their burden by rebutting this presumption.  Defs.' Opp'n at 2.  In addition, the

defendant-intervenors object on the grounds that the plaintiffs have not proven that the

documents were either before the Service at the time of its decision or were ever

considered by the Service.  Def.-Intervenors' Opp'n Mem. at 5.

When a challenge to an agency's deliberative process or decision is presented,

such as the one made by plaintiffs here, the agency must compile and designate the

administrative record that was before it and which it "directly or indirectly considered" in

reaching its decision on the action being challenged.  Alaska Excursion Cruises v. United

---

[6]      The defendants have consented to the inclusion in the Record of two of the original thirty-two documents the plaintiffs have requested be made part of the Record.  See Defs.' Opp'n at 2 n.1.  Therefore, the Court need only address the thirty contested documents.

States, 603 F. Supp. 541, 550 (D.D.C. 1984); see also James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1095 (D.C. Cir. 1996). To ensure that an agency "not skew the record in its favor by excluding pertinent but unfavorable information," the law affords an agency merely a rebuttable presumption that it properly designated an accurate and complete administrative record. The Fund for Animals v. Williams, 391 F. Supp. 2d 191, 197 (D.D.C. 2005) (citations omitted); see also Pub. Citizen, 653 F. Supp. at 1237 (citations omitted). However, this presumption may be rebutted only upon "clear evidence to the contrary," i.e. upon clear evidence that the agency's designated record is not accurate and complete, a court may supplement the administrative record. The Fund for Animals, 391 F. Supp. 2d at 197. If a party can make a "substantial showing that the agency ha[s] not filed the entire administrative record with the court," supplementation of the record can be ordered. Esch v. Yeutter, 876 F.2d at 991-92; see, e.g., The Fund for Animals, 391 F. Supp. 2d at 194 (supplementing administrative record upon the plaintiffs' showing that the government excluded relevant documents adverse to the agency's position). However, because supplementation should not be required absent exceptional circumstances, a party seeking to supplement the record must establish that the additional information was known to the agency when it made its decision, the information directly relates to the decision, and it contains information adverse to the agency's decision. San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n, 751 F.2d 1287, 1327 (D.C. Cir. 1984), aff'd 789 F.2d 26 (1986).

(a)    Two Documents Stipulated to In Previous Litigation

In Am. Lands Alliance II, four of the plaintiffs to this action brought suit against the then Secretary of the Interior and the Director of the Service, the current defendants' predecessors, challenging the Service's listing of the Gunnison sage-grouse as "warranted but precluded" under the ESA.  See 525 F. Supp. 2d at 139.  The Court takes judicial notice that in that case, the parties stipulated that two of the documents with which the plaintiff now seek to supplement the Record were part of the administrative record.  See Am. Lands Alliance II, No. 04-434, Joint Stipulation (Doc. No. 33) (D.D.C. Mar. 15, 2005) ("Am. Lands Alliance II Joint Stip.") (supplementing the administrative record to include an electronic mail communication from Jessica Young, Ph.D. to Terry Ireland, Fish and Wildlife Service (Aug. 7, 2003), and a newspaper article authored by Diedtra Henderson and entitled "Grouse Face New Threat In W. Nile," Denver Post (Oct. 27, 2003)).  The parties stipulated that: "The documents set out as Exhibits K [and] M[, the Aug. 7, 2003 e-mail which is attached to Pls.' Mot., Ex. L at No. 29], S, T, and V[, the Oct. 27, 2003 newspaper article which is attached to Pls.' Mot., Ex. L at No. 30,] attached in support of Plaintiffs' Motion for Summary Judgment are properly included in the Administrative Record[,] and . . . [the] Defendants will supplement the Administrative Record to include the documents . . . . "  Am. Lands Alliance II, Joint Stip. at 2-3.  The defendants and the defendant-intervenors[7] do not address this agreement in their

---

[7]    The defendant-intervenors note that the two documents were provided to the Service roughly thirty months prior to the Service's final listing determination decision, allegedly outside of the public comment period.  Def.-Intervenors' Opp'n at 7.  Considering that the Service first published the listing of the Gunnison sage-grouse as a candidate species on December 28, 2000, see 65 Fed. Reg. 82310, 82311, and, in that notice, and in all subsequent notices, the Service reiterated that it was seeking information on the species which it would "accept . . . at any time," the Service appears to have been soliciting public comments relevant to its listing determination, which it finally made on April 18, 2006, see 71 Fed. Reg. 19954, when the documents were submitted.

(continued . . .)

opposition filings, an acknowledgement that conflicts with the position now being taken by one of the defendants; rather, the defendants' argument for exclusion rests on the assertion that the documents do not "relate[] to the [Service]'s decision for the purpose of this exception" and therefore should not be included as part of the Record.  Defs.' Opp'n at 9.

The doctrine of judicial estoppel[8] provides that

> [w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)).  The doctrine applies equally against the government as a litigant unless the government can show that "estoppel would compromise a governmental interest in enforcing the law," "the shift in the government's position is 'the result of a change in public policy,'" or "the result of a change in facts essential to the prior judgment."  Id. at 775-76.  Here, the parties' filings and circumstances of this case support the application of judicial estoppel.  This result is called for because the presumption that the Record is accurate and complete is rebutted by the defendants' predecessors' stipulated statement that the omitted documents are properly part of the Record.  The Court therefore finds that the plaintiffs have made a substantial showing that the Service

---

[8]     "The doctrine of estoppel is intended to protect the courts rather than the litigants, so it follows that a court . . . may raise the estoppel on its own motion in an appropriate case." Matter of Cassidy, 892 F.2d 637, 641 (7th 1990) (citing Allen v. Zurich Ins. Co., 667 F.2d 1162, 1168 n.5 (4th Cir. 1982)).

has not filed an accurate and complete administrative record with the Court, and

accordingly the Service must further supplement the Record with these two documents.

(b)      Remaining Twenty-Eight Documents

The plaintiffs argue that supplementation of the remaining twenty-eight

documents is also warranted.  Pls.' Mem. at 14.  Among these documents the plaintiffs

offer two categories, twelve characterized as critical habitat records, Pls.' Mot., Ex. J, and

sixteen characterized as public outreach records, Id., Ex. K.  The critical habitat

documents consist of the Service's draft proposals for a critical habitat for the Gunnison

sage-grouse, a critical habitat which it ultimately did not designate because of its decision

not to list the species.  Id., Ex. J.  The public outreach documents consist of draft press

releases and outreach materials that the Service prepared in anticipation of a listing

determination, which it ultimately did not make.   Id., Ex. K.  The plaintiffs contend that

these documents should be added to the Record based on the Service's inconsistent

representations as to whether these documents are part of the administrative record for

the Gunnison sage-grouse.  Pls.' Mem. at 14; Pls.' Reply at 11-12.  The plaintiffs point to

discrepancies between the documents designated as the Record in this case by the

defendants, Pls.' Mot., Ex. E, and the records which the Service produced to the plaintiffs,

id., Ex. D ("Index for 'Administrative Record for Gunnison Sage-grouse Determination of

April 18, 2006'"), pursuant to a FOIA request, id., Ex. C (Letter from Mark N. Salvo,

Director, Sagebrush Sea Campaign, to Johnny Hunt, FOIA Officer, U.S. Fish and

Wildlife Service, et al. (Apr. 18, 2006)).  The plaintiffs contend that the discrepancies

demonstrate that the documents the Service produced pursuant to the plaintiffs' FOIA

request, but which the Service did not include in the Record, were considered by the

14

Service but wrongfully excluded in the Record submitted to the Court. Pls.' Reply at 11-12. The FOIA request expressly requested the "public documents possessed by the U.S. Fish and Wildlife Service that comprise the 'administrative record' for the final listing determination for Gunnison sage-grouse (Centrocercus minimus) as threatened or endangered under the Endangered Species Act (71 Fed. Reg. 19954)" Pls.' Mot., Ex. C at 1. The twenty-eight of documents at issue received from the Service that were not part of the Service-designated Record submitted to the Court are the documents the plaintiffs now seeks to have added to the Record.

The defendants oppose supplementation on the ground that the standard for FOIA disclosure is broader than the standard for compiling an administrative record, and "[t]hus a FOIA response is not the administrative record within the meaning of the APA, but rather represents all public documents that were considered in the decision-making process." Defs.' Opp'n at 10. Although, the defendants acknowledge that the documents it produced pursuant to the FOIA "represent[] all public documents that were considered in the decision-making process," but they nonetheless dispute that these documents constitute part of the Record in this case, particularly the documents that solely relate to the Service's deliberations regarding the Gunnison sage-grouse's critical habitat. Defs.' Opp'n at 10. The defendants urge the Court not to take the view that the documents were before the agency because the administrative file does not include "'any potentially relevant document existing within the agency or in the hands of a third party.'" See Defs.' Opp'n at 7 (quoting Fund for Animals, 245 F. Supp. 2d at 57 n.7 (D.D.C. 2003), vacated by 428 F.3d 1059 (D.C. Cir. 2005)). The defendants allege that the plaintiffs seek to supplement the Record with documents that merely "in some way discuss the Gunnison

sage-grouse," even though the documents are not "'related' to the [Service]'s decision at issue in this case," as mere relevance to the species is not enough to justify inclusion in the Record.  Defs.' Opp'n at 7.  In particular, the defendants represent that the public outreach documents contain "no original information," and that these documents were "only created to explain the [Service]'s decision."  Id. at 8.  Finally, the defendants maintain that the plaintiffs have not shown that the documents that they seek to have added to the Record are adverse to the Service's decision.  Id. at 12.

The defendant-intervenors oppose supplementation of these documents on the grounds that they are irrelevant to the Service's listing determination and the plaintiffs have failed to establish that the documents were before the agency decision-makers at the time of the listing decision.  Def.-Intervenors' Opp'n at 6.  The defendant-intervenors fail to address whether the documents are adverse to the Service's decision.  Id. at 8.

While the FOIA may provide for greater public access to agency records than the records an agency properly designates as the administrative record, the FOIA request here did not seek from the Service all records that merely related to the Gunnison sage-grouse.  Instead, the request sought "the 'administrative record' for the final listing determination for Gunnison sage-grouse (Centrocercus minimus) as threatened or endangered under the Endangered Species Act."  Pls.' Mot., Ex. C at 1 (emphasis added).  The defendants' reliance on the variant legal standards of disclosure therefore is to no avail.  With respect to the documents comprised of the Service's deliberations regarding the Gunnison sage-grouse's critical habitat, while an agency generally is entitled to "protect information that exposes their decision[-]making processes," and exclude them from an administrative record, Colo. Wild Horse & Burro Coal., Inc. v. Kempthorne, __

F. Supp. 2d __, __, 2008 WL 2959752, at *2 (D.D.C. 2008) (citing Petroleum Info. Corp. v. U.S. Dep't of the Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (discussing the deliberative process privilege); see also Amfac, 143 F. Supp. 2d at 12, by producing these documents pursuant to the FOIA request, the Service has waived any privilege and protection from disclosure, id. (quoting Eugene Burger Mgmt. Corp. v. U.S. Dep't of Hous. & Urban Dev., 192 F.R.D. 1, 5 (D.D.C. 1999) (stating that an otherwise protected document loses protection if "'the agency used the document in its dealing with the public'").  The plaintiffs have therefore established their prima facie showing that supplementation is proper if they can show that the Service excluded from the Record before the Court documents directly relevant to the agency's final listing determination, and that the Service knew about during its decision-making process.  Pub. Citizen, 653 F. Supp. at 1237; compare Amfac Resorts, 143 F. Supp. 2d at 13 (refusing supplementation upon the plaintiffs' attorney's affidavit alone) with Ad Hoc Metals Coal. v. Whitman, 227 F. Supp. 2d 134, 140 (D.D.C. 2002) (supplementing the administrative record upon showing that document was presented at an agency-sponsored workshop, even though comment period had closed, where the document contained adverse scientific views and evidence suggested that the agency considered it).

As to whether the critical habitat documents are relevant to the Service's listing determination, the ESA directs that not only must the Service evaluate whether a species should be listed, § 1533(a)(1), but it also directs that the Service concurrently designate a critical habitat for the species, § 1533(a)(3)(A).  In other words, the Service's determinations as to its ultimate listing determination and its designation of a critical habitat are simultaneous, correlating decisions.  See § 1533(a)(1) & (a)(3)(A).  Moreover,

a listing determination cannot exist without a critical habitat designation.  See 16 U.S.C. § 1533(a)(3)(A)(i).  Because these decisions must be made simultaneously and with correlating outcomes, they are not decisions that can be made in a vacuum.  Moreover, both decisions must be made based upon the "best scientific" data that is available.  16 U.S.C. § 1533(b)(1)(A) & (b)(2).  An agency therefore would be remiss in its statutory obligations if it did not consult the best scientific evidence on a species' habitat and range, factors, the existence or lack thereof, which are relevant to both a listing determination and a critical habitat designation.  § 1533(a)(1) & (3).  Thus, the critical habitat documents are not merely "potentially relevant" to the designation decision as suggested by the defendants, Defs.' Opp'n at 7, but they are directly relevant to the Service's obligations within the same provision of the ESA, see 16 U.S.C. § 1533.

Likewise, with respect to the sixteen public outreach documents, while the Service might ordinarily have the privilege to shield these documents from disclosure, that privilege was waived here due to the legal obligation of public disclosure as discussed above, and the documents are undoubtedly relevant.  They constitute draft publications that the Service prepared in anticipation of the public disclosure of what was then to be the Service's listing designation, and therefore are relevant to the final listing determination.

As to whether the documents were adverse to the agency's final listing determination, the defendant-intervenors do not even contest that the documents support a decision adverse to the conclusion ultimately reached by the Service.  The defendants, on the other hand, contend that the documents do not meet the adversary requirement but merely "show that the [Service] could have made a different decision on whether to list

the species." Defs.' Opp'n at 12.  By their argument itself, the defendants have identified

how the documents are potentially adverse to the agency's decision.  If, for example,

these documents were the only material in the Record on the subject about which their

content relates, they could indicate "a lack of rationality on the part of [the Service] in the

decision[-]making process." Pub. Citizen, 653 F. Supp. at 1237.  The documents may

qualify as adverse in the sense that they reflect an inclination to reach one conclusion that

presumably was based on the available evidence at that time.  In other words, the

question is not whether the information is adverse to the Record as a whole, as the

defendants seem to frame the argument; instead, the question is whether the information

is adverse to the ultimate decision.  The issue which defendants seem to address, the

rationality of the Service's decision upon consideration of the cumulative Record, is not

now before the Court.  Whether the Record as a whole – inclusive or exclusive of these

documents – supports the Service's decision is not for the Court at this moment to decide.

The Record may well contain a well-founded rational basis that supports the Service's

decision, but that is not the issue before the Court today.  Rather, the issue is whether

these documents potentially disprove the Service's decision not to list the Gunnison sage-

grouse.  Because the documents consist of maps showing the species' limited range,

proposals for a critical habitat which hinges on a listing, and drafts for the endangered

listing and the accompanying public outreach materials, the Court finds that the plaintiffs

have satisfied the adversary requirement.

On the question of whether the Service knew about the documents, it is axiomatic

that documents created by an agency itself or otherwise located in its files were before it.

See The Fund for Animals, 391 F. Supp. 2d at 198.  Many of the documents which the

plaintiffs seek to supplement include drafts of the proposed listing and accompanying public outreach materials prepared by the Service itself.  And all of the documents that the plaintiffs seek to supplement were provided to the plaintiffs by the Service.  It also stands to reason that because the FOIA only requires federal agencies to produce records "in the[ir] possession," the documents produced by the Service to the plaintiffs in response to the FOIA request are documents from the Service's files.  See NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 221 (1978).  Moreover, the defendants acknowledge, as a general matter, that the records an agency produces pursuant to a FOIA request "represent[] all public documents that were considered in the decision-making process."  Defs.' Opp'n at 10.  It is without question then that the Gunnison sage-grouse related documents that the plaintiffs received from the Service are documents that were before the Service.

The Court, therefore, finds that the plaintiffs have made a substantial showing that the Service "has not filed the entire administrative record with the court," Esch, 876 F.2d at 991-92, and "'excluded from the record evidence adverse to its position,'" Pub. Citizen, 653 F. Supp at 1237 (quoting San Luis Obispo Mothers for Peace, 751 F.2d at 1227, aff'd 760 F.2d 1320 (en banc)), which the Service "directly or indirectly considered" in coming to its decision, Amfac Resorts, 143 F. Supp. 2d at 12.  These findings rebut the usual presumption of completeness and accuracy afforded to the Record designated by the Service.  See The Fund for Animals, 391 F. Supp. 2d at 197.  Accordingly, the Service must supplement the Record with the remaining twenty-eight documents.[9]

2.      Certification of the Administrative Record

---

[9]      As a result of the Court's decision to supplement the Record with the documents submitted by the plaintiffs, the Court need not consider whether to review any extra-record evidence.

The plaintiffs request that this Court order the Service to certify the Record and provide a declaration "that the Record is complete[,] explain[ing] the manner and guidelines that were used to compile the Record[,] and identify[ing] what the Record contains, and importantly, what it does not contain." Pls.' Mem. at 22. The defendants and the defendant-intervenors oppose the motion on the ground that an agency's certification enjoys a presumption of validity, and the Service filed such a certification on April 16, 2007. Defs.' Opp'n at 2; Def.-Intervenors Mem. at 9. The defendants also oppose the motion on the ground that the law does not require certification of the Record, although agencies often certify a record as a matter of general practice, as the Service did here. Defs.' Opp'n at 2, 17. The defendants acknowledge, however, that on August 31, 2007, the Service "agreed to add additional documents requested by Plaintiffs to that record." Id. at 2.

It is clear by the Service's own admission that its April 16, 2007 certification is inaccurate, and, thus, the presumption of accuracy is rebutted. The defendants cannot rely on a presumption of accuracy with regard to the administrative record when, by their own admission, and now by the reasons set forth in this Memorandum Opinion and accompanying Order, the Record is found to be lacking. However, because there is no legal authority compelling the defendants to certify an administrative record in the first instance, the Court has no basis for requiring the Service to certify the Record now.

**B.      The Plaintiffs' Judicial Notice Request**

The plaintiffs request that the Court take judicial notice of a March 27, 2007 Inspector General Report that casts a shadow over the role the former Deputy Assistant Secretary of Interior for Fish, Wildlife and Parks played in shaping the Service's

scientific reports, and concluded that "she violated the Code of Federal Regulations by disclosing nonpublic information to private sector sources." Pls.' Mem. at 26 & Ex. B. The plaintiffs ask the Court to take judicial notice of the report's "public[cation], . . . its general nature, and . . . its conclusions." Id. at 26 n.9.

The defendants oppose the motion on the grounds that the report post-dates the Service's final listing determination by almost a year, and it is improper for a court to review extra-record materials challenging the correctness or wisdom of an agency's decisions. Defs.' Opp'n at 19. Similarly, the defendant-intervenors object on the grounds that the report is irrelevant to the Service's final listing determination, and that the report is not an appropriate document for judicial notice. Def.-Intervenors Opp'n at 13. The defendant-intervenors add that if the Court takes judicial notice of the report, it should also take judicial notice of the former Deputy Assistant Secretary's rebuttal letter. Id. & Ex. B.

Federal Rule of Evidence 201 addresses when a court may take judicial notice. It states that a court may take judicial notice of "adjudicative facts" "at any stage of the proceeding." Fed. R. Evid. 201(a) & (b) (2008). The Rule defines a fact appropriate for judicial notice as "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) (2008).

The Inspector General's report is not the type of document about which there can be no reasonable dispute. The Court knows nothing about the investigative process which led to the report's conclusions, and it cannot access the report's validity or be

assured that the former Deputy Assistant Secretary received adequate notice and the

opportunity to be heard on its contents.  Moreover, the Court reviews the adequacy of an

agency's action based on the evidence before the agency at the time of its decision, Camp

v. Pitts, 411 U.S. 138, 142 (1973), and the Court is required to defer to the "agency's

expertise and experience with respect to questions involving scientific or technical

matters or policy decisions based on uncertain technical information."  The Fund for

Animals, 903 F. Supp. at 105 (citing Marsh, 490 U.S. at 375-78; New York v. Reilly, 969

F.2d 1147, 1150-51 (D.C. Cir. 1992)).  Not only was the Inspector General's report not

before the Service when it made its final designation decision, but the Court is not in a

position to question the propriety of the Service's use of the former Deputy Assistant

Secretary as a technical or scientific expert.

        As the defendants accurately point out, what the plaintiffs seek, in effect, is for

the Court to review the report as extra-record evidence.  Extra-record material constitutes

documents, data, and other information which was not part of the administrative record

which a party contends a reviewing court should consider in ascertaining whether the

record was complete and there was a good faith basis underlying its creation.  Amfac

Resorts, 143 F. Supp. 2d at 12.  Because an agency may not have had the benefit of extra-

record material when it made its decision, a court should only consider such material in

exceptional circumstances.  Id. at 11.  Exceptional circumstances include:

>             (1)  when agency action is not adequately explained in the
>                  record before the court;
>             (2)  when the agency failed to consider factors which are
>                  relevant to its final decision;
>             (3)  when an agency considered evidence which it failed to
>                  include in the record;
>             (4)  when a case is so complex that a court needs more
>                  evidence to enable it to understand the issues clearly;

> (5) in cases where evidence arising after the agency action
>     shows whether the decision was correct or not;
> (6) in cases where agencies are sued for failure to take
>     action;
> (7) in cases arising under the National Environmental
>     Policy Act; and
> (8) in cases where relief is at issue, especially at the
>     preliminary injunction stage.

Esch, 876 F.2d at 991.  In order to invoke one of these exceptions, a party seeking a court

to review extra-record evidence must first establish that the agency acted in bad faith or

otherwise behaved improperly, or that "the record is so bare that it prevents effective

judicial review."  Fund for the Animals, 245 F. Supp. 2d at 57-58 (citing Commercial

Drapery Contractors v. United States, 133 F.3d 1, 7 (D.C. Cir. 1998)).

        For the following reasons none of these circumstances apply here.  First, the

Record is not so bare as to prevent judicial review.  The Record certified by the

defendants in April 2006 includes 13,900 pages of documentation.  Defs.' Opp'n at 5.

Second, the plaintiffs have not met the standard for showing that the Service acted in bad

faith or otherwise behaved improperly in its listing designation process so as to warrant

the Court's review extra-record evidence.  Even if everything the Inspector General's

report states is true – that the Deputy Assistant Secretary did "change documents and

alter biological reporting regarding the Endangered Species Program," Defs.' Mem., Ex.

B (Inspector General's Report) at 2 – the plaintiffs have offered nothing more than mere

speculation and conjecture that the former Deputy Assistant Secretary acted improperly

in this instance.  Unless the plaintiffs can show that she acted improperly with respect to

the listing determination of the Gunnison sage-grouse rendering the Service's decision

arbitrary and capricious under the APA, the Court cannot draw the inference suggested

by the plaintiffs.  Therefore, the Court is precluded from taking judicial notice of the Inspector General's report.

### IV.  CONCLUSION

For the forgoing reasons, this Court **GRANTS** in part, and **DENIES** in part the plaintiffs' motion.[10]

**SO ORDERED** this 10th day of November, 2008.


_____/s/_____
REGGIE B. WALTON
United States District Judge

---

[10] An order consistent with this Memorandum Opinion was entered on September 30, 2008.